COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Petty
Argued at Chesapeake, Virginia


JAMES PAUL VENABLE, JR.

                                                        OPINION BY
v.        Record No. 0190-05-1              JUDGE ROBERT J. HUMPHREYS
                                                        JULY 11, 2006
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                              Edward L. Hubbard, Judge

            Oldric J. LaBell, Jr., for appellant.

            Susan M. Harris, Assistant Attorney General (Robert F. McDonnell,
            Attorney General, on brief), for appellee.


        Appellant James Paul Venable, Jr. ("Venable"), a convicted sex offender, contends that

the trial court erred in holding that he had violated a condition of his probation.  Venable reasons

that his probation violation was predicated solely upon the fact that he was discharged from a

court-ordered sex-offender counseling program after he refused to admit that he committed the

crime for which he was convicted.  Because admitting his guilt would have subjected Venable to

potential criminal liability for perjury, he contends that the court could not impose a penalty

upon the exercise of his Fifth Amendment right to avoid compelled self-incrimination.  For the

reasons that follow, we affirm the judgment below.

                                    I.  BACKGROUND

        The relevant facts are not in dispute.  On November 27, 2001, the circuit court, following

a bench trial, convicted Venable of taking indecent liberties with a child, in violation of Code

§ 18.2-370.1.  The trial court sentenced Venable to five years in prison, but suspended all five

years of the sentence conditioned, in part, upon Venable's completion of the Advanced

Therapeutics Newport News Sexual Offender Community Protection Program ("the Program"). The trial court also required Venable to comply with all rules and requirements set by the probation officer. Venable did not object to entry of this order.

Several days after his sentencing, Venable endorsed the Program guidelines, which state that, "[t]o participate in the [Program], the Offender needs to accept responsibility for the sex crime he/she was convicted of committing." The guidelines also provide that "[a]ny offender who remains in denial after a period of six (6) sessions will be unsuccessfully discharged from the program. They will be discharged for not being amenable to treatment."

Although Venable attended counseling, he refused to admit that he had committed the crime for which he was convicted. Accordingly, Venable was discharged from the Program. Venable's probation officer then issued a report, requesting a rule to show cause as to why Venable's suspended sentence should not be revoked. The probation officer reasoned that Venable "has been unsuccessfully discharged from sex offender treatment" and "has remained in total denial regarding his offense and [] continually resisted the therapeutic effort afforded him."

In response, Venable stated that he was "asserting his Fifth Amendment right against self-incrimination re a possible perjury charge in regards to my testimony concerning my conviction." Venable reasoned that, "[a]s this is court ordered and there has been no immunity from prosecution given for the possible perjury charge, I do and will continue to assert my Fifth Amendment rights not to incriminate myself." Venable further requested a modification to the terms of his probation, removing the requirement that he participate in the Program or "that he make incriminating admissions therein."

On December 10, 2004, the trial court conducted a probation revocation hearing. In response to Venable's constitutional argument, the trial court reasoned that the Fifth Amendment did not apply because Venable was "not compelled to do anything. His choice not to admit the

offense is merely a tactic[], no different than what it would be prior to trial." The trial court then heard testimony from the probation officer, who testified that Venable's discharge from the Program was primarily "based upon his . . . inability to do the work necessary," including "failure to turn in general homework." The probation officer admitted, however, that "what killed the deal is [Venable's] failing to admit to something having occurred resulting in his conviction."

At the conclusion of the hearing, the trial court found that "Venable violated the conditions of my suspended sentence in that he has not been amenable to treatment and . . . has been unwilling to admit his guilt." The court, however, continued the disposition of the case to give Venable the opportunity "to submit something else to [the court], some alternative program or something like that." The court explained that, "[i]f you could convince me on another program that I think would be just as effective as this one and doesn't have that requirement [of admitting guilt], I'm willing to take a look at it, but I don't know of any at this point."

During the subsequent hearing, Venable stated that he was willing to participate in "Therapeutic Options," an alternative sex-offender program, also proffering that "the Commonwealth is satisfied with the [alternative] program." Although not certain, Venable stated that he believed the requirements of the two programs are "basically the same." When asked if he had anything to say, Venable responded that he was "willing to do whatever [he] need[s] to complete the [alternative] course" because he "want[s] to get out so that [he] can support [his] wife and family." The trial court then opted to "continue [Venable] on probation, substituting the [alternate] sexual offender program" for the original treatment program.

This appeal follows.

## II. ANALYSIS

On appeal, Venable argues that the trial court violated his Fifth Amendment rights in two respects: first, by holding that he had violated a condition of his probation, and second, by re-enrolling him in an alternative counseling program.[1] For the reasons that follow, we hold that, under the circumstances of this case, the trial court did not violate Venable's Fifth Amendment rights. Accordingly, we affirm the judgment below.

### A. Whether the Court Erred in Holding that Venable Violated His Probation

The Fifth Amendment provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V.[2]

> It has long been held that this prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

Minnesota v. Murphy, 465 U.S. 420, 426 (1984) (quoting Lefkowitz v. Turley, 414 U.S. 70, 77 (1973)); see also Husske v. Commonwealth, 252 Va. 203, 214, 476 S.E.2d 920, 927 (1996). Thus, "'a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant,'" and, "'if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution.'" Murphy, 465

---

[1] Venable does not challenge the trial court's decision to impose completion of the Program as an original condition of his probation.

[2] The Fifth Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6 (1964) ("We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States."); see also Spevack v. Klein, 385 U.S. 511, 514 (1967) ("[T]he Self-Incrimination Clause of the Fifth Amendment has been absorbed in the Fourteenth.").

U.S. at 426 (quoting Turley, 414 U.S. at 78).  Also, "[a] defendant does not lose this protection by reason of his conviction of a crime," regardless of whether the defendant "is imprisoned or on probation at the time he makes incriminating statements."  Id.

The United States Supreme Court has further held that "a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself."  Lefkowitz v. Cunningham, 431 U.S. 801, 805 (1977); see also Turley, 414 U.S. at 84-85; Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation, 392 U.S. 280 (1968); Gardner v. Broderick, 392 U.S. 273 (1968); Spevack v. Klein, 385 U.S. 511 (1967).  These cases are grounded in the concept that "the Fifth Amendment guarantees . . . the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, *and to suffer no penalty . . . for such silence*."  Malloy v. Hogan, 378 U.S. 1, 8 (1964) (emphasis added); see also Chavez v. Martinez, 538 U.S. 760, 768-69 (2003) ("[N]o 'penalty' may ever be imposed on someone who exercises his core Fifth Amendment right not to be a 'witness' against himself in a 'criminal case.'").[3]  For this reason, the United States Supreme Court has observed, albeit in *dicta*, that "its decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege," Murphy, 465 U.S. at 438, for, in doing so, the government would be

---

[3] In Chavez, a plurality of the United States Supreme Court held that "mere coercion does not violate the text of the Self-Incrimination Clause."  538 U.S. at 767.  In the "so-called penalty cases," McKune v. Lile, 536 U.S. 24, 40 (2002), however, it is the *threat* to impose a substantial penalty that constitutes the governmental coercion, and the actual imposition of the penalty that implicates the Fifth Amendment.  See Chavez, 538 U.S. at 768-69.  Thus, under existing Supreme Court precedent, it appears there are two ways in which the Fifth Amendment may be violated:  (1) compulsion plus actual imposition of the threatened penalty, as in Cunningham, Turley, Gardner, and Spevack, or (2) compulsion plus "use of the compelled statements in a criminal case against the witness."  Chavez, 538 U.S. at 767.  Under the circumstances of this case, Venable made no statements that were introduced during a subsequent criminal proceeding.  Accordingly, we are only concerned with the first line of cases, questioning whether Venable has been both compelled to testify and then penalized for exercising his Fifth Amendment privilege.

- 5 -

imposing a penalty upon an individual who "elects to exercise his Fifth Amendment right not to give incriminating testimony against himself," Cunningham, 431 U.S. at 805.

Here, Venable argues that the trial court's holding—specifically, that he violated the terms of his probation when he was discharged from the Program for failing to admit to his guilt—violated the Fifth Amendment. Venable reasons that, had he admitted to his guilt during his counseling sessions, he would be exposed to potential criminal liability for perjury.[4] Thus, Venable concludes that the trial court was constitutionally precluded from holding that he had violated the conditions of his probation because, in doing so, the court imposed a penalty upon the exercise of his Fifth Amendment rights.

It is not clear from the record before us that suspending a penitentiary sentence conditioned upon Venable's successful completion of a sex-offender treatment program constituted a form of governmental coercion. Cf. McKune v. Lile, 536 U.S. 24, 41 (2002) (upholding a prison regulation denying certain privileges to inmates who refused to participate in a sex-offender treatment program, reasoning that the threatened consequences, specifically, "a transfer to another prison where television sets are not placed in each inmate's cell, where exercise facilities are not readily available, and where work and wage opportunities are more limited," were not so great as to "compel a prisoner to speak about his past crimes despite a

---

[4] The record in this case does not affirmatively indicate that Venable did, in fact, testify under oath during his original criminal trial. It is questionable, then, whether Venable actually faces a "realistic threat of self-incrimination." Murphy, 465 U.S. at 435 n.7. However, because neither the Commonwealth nor the trial court disagreed with Venable's contention that admitting his guilt would place him at risk of being prosecuted for perjury, we need not decide this issue, and will instead assume, for purposes of this appeal only, that Venable's admission of guilt would be self-incriminating. But compare McComb v. State, 94 P.3d 715, 717, 721 (Kan. Ct. App. 2004), with James v. State, 75 P.3d 1065, 1072 (Alaska Ct. App. 2003), and State v. Tate, 654 N.W.2d 438, 439, 444-45 (Wis. 2002). Similarly, we need not decide whether, under the circumstances of this case, Venable's acceptance of the terms of his probation constituted a valid waiver of his Fifth Amendment rights.

desire to remain silent").[5]  However, because, as discussed below, the trial court in this instance did not actually impose a "substantial penalty" based upon Venable's exercise of his Fifth Amendment privilege, we need not reach the issue of whether forcing a probationer to choose between either losing his conditional liberty or incriminating himself during court-ordered counseling constitutes "compulsion" within the meaning of the Fifth Amendment.[6]

As recently noted by the United States Supreme Court, "mere coercion does not violate the text of the Self-Incrimination Clause." Chavez, 538 U.S. at 767.  Rather, we must also consider whether the trial court actually imposed a "substantial penalty" upon Venable after he "elect[ed] to exercise his Fifth Amendment right not to give incriminating testimony against himself." Cunningham, 431 U.S. at 805.  Not all consequences that "follow[] directly from a person's silence" constitute a "substantial penalty" within the meaning of the Fifth Amendment. McKune, 536 U.S. at 44.  Specifically, although "penalties" said to implicate the Fifth

---

[5] Although taken from the plurality opinion, this rationale is identical to that expressed in Justice O'Connor's concurring opinion, which is "arguably more narrow than the plurality's," and, thus, has generally been treated as "the holding of the Court." Ainsworth v. Stanley, 317 F.3d 1, 4 (1st Cir. 2002); see McKune, 536 U.S. at 48-49 (O'Connor, J., concurring in the judgment) ("[T]he alterations in respondent's prison conditions as a result of his failure to participate in the Sexual Abuse Treatment Program (SATP) were not so great as to constitute compulsion for purposes of the Fifth Amendment privilege against self-incrimination.").

[6] See, e.g., State v. Eccles, 877 P.2d 799, 801 (Ariz. 1994) (*en banc*) ("The state may not force [a] defendant to choose between incriminating himself and losing his probationary status by remaining silent."); State v. Fuller, 915 P.2d 809, 813-14 (Mont. 1996) (holding that the "State compelled [the defendant] to divulge past activities which it knew would be criminal" when it conditioned his probation upon participation in a sex-offender counseling program, reasoning that "[a] command to speak, under threat of loss of liberty, implicitly forecloses the option of remaining silent"). But see United States v. Cranley, 350 F.3d 617, 621 (7th Cir. 2003) (Posner, J.) ("[T]o say to a convicted criminal we will not let you substitute freedom for imprisonment unless you agree to give a full accounting of any criminal behavior in which you have engaged seems a reasonable condition to attach to probation.  Granted, it would be in tension with language in Minnesota v. Murphy . . . .  But American law doesn't stand still. Decisions subsequent to Murphy . . . evince a greater willingness to enforce terms attached to conditional release, though [none] involved the right not to be compelled to incriminate oneself.").

- 7 -

Amendment are "not restricted to fine[s] or imprisonment," Spevack, 385 U.S. at 515, they encompass only those sanctions that "make[] assertion of the Fifth Amendment 'costly.'" Id.

Even if we were to assume that the Commonwealth "could not constitutionally *carry out* a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege," Murphy, 465 U.S. at 438 (emphasis added), the trial court in this instance did not actually revoke Venable's probation.[7] Nor is there any evidence that the court's holding resulted in the imposition of a fine or other identifiable sanction. Rather, the court merely continued Venable's probation and, at Venable's request, substituted a different sex-offender counseling program for the original treatment program. Under these circumstances, "[w]e are persuaded that the [trial] Court did not impose a 'price tag' on [the exercise of Venable's] constitutional privilege to remain silent." United States v. Vermeulen, 436 F.2d 72, 76 (2d Cir. 1970).

We conclude, therefore, that the record fails to demonstrate that the trial judge imposed a "substantial penalty" upon Venable. Because Venable has not, in fact, been deprived of his conditional liberty or subjected to any other "costly" sanction, it follows that the trial court did not contravene the Self-Incrimination Clause of the Fifth Amendment when it held that Venable, by reason of his discharge from the Program, violated a condition of his probation.

B. Whether the Court Erred in Ordering Venable to Participate in the Alternative Program

Venable's second argument—that the trial court also violated the Fifth Amendment when it substituted the alternative sex-offender treatment program for the original Program—also fails. First, there is no evidence in the record from which it could be inferred that the alternative sex-offender program requires participants to admit to their guilt. Cf. Commonwealth v. Brescia,

---

[7] We note that in both Mace v. Amestoy, 765 F. Supp. 847 (D. Vt. 1991), and State v. Imlay, 813 P.2d 979 (Mont. 1991), the cases upon which Venable principally relies, the defendant's probation was actually revoked after he refused to admit to his guilt while participating in a court-ordered sex-offender counseling program. Thus, these cases are both unpersuasive and readily distinguishable.

810 N.E.2d 842, 844 (Mass. App. Ct. 2004) (holding that the defendant did not establish that a court order requiring him to submit to counseling violated the Fifth Amendment where the defendant "failed to provide any support for the proposition that his participation in a treatment program will require him to incriminate himself").

Second, Venable not only agreed to, but actually proposed, enrollment in this alternative program. Accordingly, this probation condition was imposed with Venable's full and voluntary consent. See Wolfe v. Pa. Dept. of Corr., 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004) ("A voluntary decision to participate in the [sex-offender treatment program] does not rise to constitutional infirmity simply because some of the consequences of participation are unpleasant—consequences that plaintiffs are aware of from the outset when the decision is made."); see also United States v. Ross, 9 F.3d 1182, 1191 (7th Cir. 1993) ("[W]e cannot accept that [a probationer] has an additional right to avoid the express conditions upon which he was granted probation . . . . He must make a choice. If he is to enjoy the advantages of supervised release, he must comply with any lawfully imposed conditions of probation." (citation omitted)), vacated on other grounds, 511 U.S. 1124 (1994).

Because the record does not affirmatively indicate that participants in the alternative sex-offender treatment program must admit to their guilt, and because Venable both proposed and consented to his participation in that program, we hold that the trial court did not violate the Fifth Amendment when it ordered Venable, as a condition of his probation, to enroll in an alternative sex-offender treatment program. See generally Wolfe, 334 F. Supp. 2d at 773.

III. CONCLUSION

For these reasons, we hold that the trial court did not contravene the Self-Incrimination Clause of the Fifth Amendment when it found that Venable violated a condition of his probation, nor did it violate the Fifth Amendment by ordering Venable, as a condition of his continued

probationary status, to enroll in an alternative sex-offender treatment program suggested by

Venable himself.  Accordingly, we affirm the judgment below.

Affirmed.

Benton, J., concurring.

The United States Supreme Court has held as follows:

> The Fifth Amendment[, which] provides that no person "shall
> be compelled in any criminal case to be a witness against
> himself[,]" . . . not only protects the individual against being
> involuntarily called as a witness against himself in a criminal
> prosecution but also privileges him not to answer official questions
> put to him in any other proceeding, civil or criminal, formal or
> informal, where the answers might incriminate him in future
> criminal proceedings.

Lefkowitz v. Turley, 414 U.S. 70, 77 (1973) (citing McCarthy v. Arndstein, 266 U.S. 34, 40
(1924)).  Indeed, in Minnesota v. Murphy, 465 U.S. 420 (1984), where a probationer admitted
committing crimes to a probation officer and did not timely invoke the Fifth Amendment, id. at
423-24, the Supreme Court reiterated that its "decisions have made clear that the State could not
constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth
Amendment privilege."  Id. at 438; see also Mace v. Amestoy, 765 F. Supp. 847 (D. Vt. 1991)
(granting a petition for habeas corpus because the probation revocation violated the petitioner's
Fifth Amendment rights against self-incrimination).  The Supreme Court's reference to its prior
decisions was not inconsequential to its decision in Murphy because the Court held, "in light of
[its] decisions proscribing threats of penalties for the exercise of Fifth Amendment rights,
Murphy could not reasonably have feared that the assertion of the privilege would have led to
revocation."  465 U.S. at 439.

In this case, Venable, a probationer, timely asserted his Fifth Amendment privilege when
he was questioned in a sexual treatment program ordered by his probation about sexual offenses.
The principle is long standing that a person who is protected by the Fifth Amendment privilege
may "refuse to answer unless and until he is protected at least against the use of his compelled
answers and evidence derived therefrom in any subsequent criminal case in which he is a
defendant."  Lefkowitz, 414 U.S. at 78 (citing Kastigar v. United States, 406 U.S. 441 (1972)).

- 11 -

Although the Commonwealth instigated proceedings to revoke Venable's probation for his refusal to respond to the questioning, the trial judge continued Venable's probation and ordered him to participate in an alternate program, one suggested by Venable.

For these reasons, I would hold that Venable has failed to demonstrate he suffered punishment for the exercise of his Fifth Amendment rights. Thus, I too would affirm the trial judge's order.