PRESENT:  Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Lacy, S.J.

DMITRY MIKHAYLOV

v.  Record No. 150552

OPINION BY
JUSTICE D. ARTHUR KELSEY
April 21, 2016

LISA SALES

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Lorraine Nordlund and David S. Schell, Judges

Dmitry Mikhaylov appeals a final judgment against him in a civil jury trial, claiming the trial court misapplied principles of judicial estoppel and erroneously failed to exclude from evidence expert testimony that had not been previously disclosed during pretrial discovery. Agreeing with both assertions, we reverse and remand.

I.

In September 2011, Mikhaylov pleaded guilty to assault and battery of Lisa Sales.  See Code § 18.2-57.[1]  A general district court accepted his plea and found Mikhaylov guilty.  In 2013, Sales filed a civil suit against Mikhaylov seeking damages for, among other things, the assault and battery.  In his answer, Mikhaylov admitted that he had pleaded guilty to the criminal charge but denied that he had actually committed the offense and further denied the extent to which Sales claimed she was injured.  Mikhaylov repeated these denials in response to a request for admissions.  Throughout the civil proceeding, Mikhaylov took the position that Sales had fabricated the story because of ulterior motives and that he had a mitigating explanation for his earlier guilty plea.

---

[1] The arresting officer initially charged Mikhaylov with sexual battery, a violation of Code § 18.2-67.4, and abduction, a violation of Code § 18.2-47.  The general district court amended the warrants of arrest to charge simple assault and battery, a violation of Code § 18.2-57, and destruction of property, a violation of Code § 18.2-137.  The general district court convicted Mikhaylov of the amended charges, pursuant to a guilty plea.

Sales filed a motion for partial summary judgment on the counts for assault and battery. Citing Code § 8.01-418, Sales argued that Mikhaylov's guilty plea was "admissible evidence of civil battery and assault" and was "sufficient" to establish his liability as a matter of law. Sales did not mention collateral estoppel, judicial estoppel, or any theory of issue preclusion in either her brief or oral argument on the motion. In response, Mikhaylov agreed that his guilty plea was "admissible to prove liability" but countered that he was nonetheless "free to explain the circumstances surrounding the plea and the matter ultimately becomes an issue of fact for the jury to decide."

At the hearing on the motion, Sales repeated her argument that the guilty plea was admissible under Code § 8.01-418 and that no other circumstances raised a genuine issue of material fact concerning Mikhaylov's liability for the assault and battery. The court asked whether Sales relied on principles of collateral estoppel.[2] Sales disclaimed the theory, pointing out that "there's no mutuality between the criminal proceeding and the civil proceeding."

Turning to Mikhaylov, the court asked, "Are you familiar with the doctrine of a judicial estoppel?" Mikhaylov replied that he was familiar with the doctrine but that it did not apply to this case because Sales "wasn't a party in the criminal proceeding. It was the Commonwealth that was the party. That's the problem, your Honor, with the [doctrine] that you cited."

The court rejected this contention, holding that Mikhaylov was "free to explain the circumstances" of the offense but could not deny that he committed the "act of assault and battery." The court added that Mikhaylov was precluded from introducing any evidence seeking to explain the "circumstances surrounding the plea" because he should have either appealed or brought a habeas action if he wanted to "attack" his guilty plea. Mikhaylov again objected,

---

[2] Judge Lorraine Nordlund presided over the hearing addressing the motion for partial summary judgment. Judge David S. Schell later entered the final judgment after a jury trial.

arguing that he was not attacking the validity of the plea, but rather wanted merely to explain why he agreed to it.

The court's written order stated "that the Court makes a finding of an admission by the Defendant with his plea of guilty to the criminal charge of assault and battery and, at trial, the Defendant cannot deny that he has committed an assault and battery on the grounds of the judicial estoppel doctrine." After thus establishing Mikhaylov's liability as a matter of law, the order stated that he "may argue at trial" any issue related to damages or proximate cause. Despite these findings, however, the order stated that the court denied the motion for partial summary judgment.

When the case proceeded to a jury trial,[3] Sales testified that Mikhaylov had perpetrated a "brutal attack" on her for three to four hours. In response, Mikhaylov took the stand to deny the allegations against him. When he testified that he did not "attack" Sales as she claimed, the court sustained an objection by Sales. The court reasoned, "How can you have an assault and battery without an attack?" Mikhaylov answered that any "unwanted" touching could constitute a technical assault and battery, but the allegation of an "attack" went well beyond that. The court disagreed and instructed the jury to "disregard" Mikhaylov's testimony "that he did not attack" Sales.

At trial, Sales offered the expert testimony of Dr. Kenneth Lippman regarding the nature and extent of her injuries. Mikhaylov objected to the expert testimony to the extent it offered an opinion on the need for future medical treatment because the expert designation required by the pretrial scheduling order did not disclose any opinion on this subject and neither party had

---

[3] The first jury trial ended in a mistrial due to the injection of prejudicially inadmissible evidence during the testimony of Sales, despite the trial court's ruling to exclude the evidence following a previous motion in limine. No further discovery was requested or conducted following the mistrial.

3

addressed the subject during the deposition of the expert. Sales conceded both of these points but argued that Mikhaylov nonetheless should have anticipated Dr. Lippman's opinions on future medical treatment.

The trial court overruled the objection on the ground that it "would not be fair" to Sales for Mikhaylov to wait until trial to object to Dr. Lippman's previously undisclosed opinion. The court explained its reasoning this way:

> If the plaintiff knows before trial, by motion in limine or by protective order, that they cannot proceed with this particular claim, then that puts them in one status and they can prepare in that fashion. If at trial suddenly they have this issue thrust upon them, that puts them in a different status, and the balancing of equities, in my judgment, is different. Perhaps on a motion in limine or some pretrial motion, the defendant may have been successful.

> But now we're in trial, and this is presented to the plaintiff in the middle of trial. And to me that makes it a different fairness analysis and also a different analysis in terms of prejudice.

In response, Mikhaylov amplified his objection, "Judge . . . . The expert was not designated to testify as to future claims, future treatment, future costs." Mikhaylov argued further, "It's been acknowledged by the plaintiff that [the expert] was not designated for that specific type of claim, future treatment claim or cost, and there was nothing in his deposition and there is prejudice to the defendant to allow that testimony in." The court disagreed and allowed Dr. Lippman to testify that Sales, at some point in the future, would need neck surgery, specifically "an anterior cervical discectomy and fusion," and would also need treatment for meniscus injuries.

The court sent the case to the jury with instructions relating to claims of assault and battery and intentional infliction of emotional distress. Addressing assault and battery, the court instructed: "The defendant cannot deny that he assaulted and battered the plaintiff." Mikhaylov objected to the instruction, arguing that it "in essence, grants summary judgment in favor of the

4

plaintiff as to the assault and battery claim." The jury returned a verdict for Sales on assault and battery as well as intentional infliction of emotional distress.

II.

On appeal, Mikhaylov's assignments of error focus on two decisions of the trial court. First, Mikhaylov argues that the court erred in applying judicial estoppel to his guilty plea. Second, he contends the court abused its discretion by permitting Sales to introduce expert opinions not previously disclosed during the discovery process.

A. JUDICIAL ESTOPPEL

Though the term itself is relatively new, the historic concepts underlying "judicial estoppel" have been part of our legal heritage for centuries. Wooten v. Bank of Am., N.A., 290 Va. 306, 309-10, 777 S.E.2d 848, 849-50 (2015) (noting its conceptual roots in ancient Scottish law). The doctrine "protects a basic tenet of fair play" by precluding litigants from "'playing fast and loose' with the courts" or "'blowing hot and cold' depending on perceived self-interest." Id. at 310, 777 S.E.2d at 850 (citations omitted).

The strength of these broad justifications, however, is bridled by "several limitations" on the scope of the doctrine. Id. Among these is the principle limiting judicial estoppel to "the same parties or their privies when the inconsistent positions involve different proceedings." Id. at 311 n.4, 777 S.E.2d at 850 n.4. Except in truly unique circumstances,[4] judicial estoppel

---

[4] The only such circumstance recognized to date involves cases "where the liability of one defendant is derivative of the liability of another; for example, 'where the relation between defendants in the two suits has been that of principal and agent, master and servant, or indemnitor and indemnitee.'" Lofton Ridge, LLC v. Norfolk S. Ry., 268 Va. 377, 382-83, 601 S.E.2d 648, 651 (2004) (quoting Town of Waynesboro v. Wiseman, 163 Va. 778, 782-83, 177 S.E. 224, 226 (1934)); see also Bentley Funding Grp. v. SK&R Grp., 269 Va. 315, 326 n.6, 609 S.E.2d 49, 54 n.6 (2005); Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 14.12, at 1237 (6th ed. 2014).

"applies in Virginia only when the parties to the disparate proceedings are the same." Bentley Funding Grp. v. SK&R Grp., 269 Va. 315, 326, 609 S.E.2d 49, 54 (2005).[5]

In other equitable estoppel contexts, we have consistently held that the Commonwealth and a crime victim cannot be considered synonymous parties or related privies. See, e.g., Selected Risks Ins. v. Dean, 233 Va. 260, 263-64, 355 S.E.2d 579, 581 (1987) (holding that issue preclusion requires mutuality of parties); cf. Honaker v. Howe, 60 Va. (19 Gratt.) 50, 56 (1869) (recognizing that a criminal confession of guilt does not have preclusive effect on a subsequent civil action because "though founded on the same fact, [they] are distinct remedies, prosecuted by different parties and for different purposes").[6] We see no principled reason to have a different rule for purposes of judicial estoppel, which itself is a variant subset of general principles of equitable estoppel.

The trial court thus erred in applying judicial estoppel in the civil suit by Sales against Mikhaylov based upon the guilty plea that he made in the earlier criminal case prosecuted on behalf of the Commonwealth. That does not mean that his guilty plea was inadmissible. Code § 8.01-418 provides that a guilty plea "shall be admissible" evidence "in any civil action" involving the "same occurrence." See Koutsounadis v. England, 238 Va. 128, 133, 380 S.E.2d 644, 647 (1989). The same would be true under common law principles governing a "party

---

[5] See also Virginia Elec. & Power Co. v. Norfolk S. Ry., 278 Va. 444, 462, 683 S.E.2d 517, 527 (2009); Lofton Ridge, LLC, 268 Va. at 382, 601 S.E.2d at 651; Ferebee v. Hungate, 192 Va. 32, 36, 63 S.E.2d 761, 764 (1951); W. Hamilton Bryson, Bryson on Virginia Civil Procedure § 12.04, at 12-15 (4th ed. 2005); John L. Costello, Virginia Remedies § 7.11[2], at 7-42 to 7-43 (4th ed. 2011).

[6] A common-sense exception to the mutuality principle has been recognized when the convicted criminal initiates the later civil action instead of the crime victim or some other non-party to the criminal case. Eagle, Star & British Dominions Ins. v. Heller, 149 Va. 82, 104-05, 140 S.E. 314, 321 (1927); see also Haring v. Prosise, 462 U.S. 306, 316 n.10 (1983); Smith v. New Dixie Lines, Inc., 201 Va. 466, 472-73, 111 S.E.2d 434, 438-39 (1959); Aetna Cas. & Sur. Co. v. Anderson, 200 Va. 385, 389, 105 S.E.2d 869, 872 (1958); Sinclair & Middleditch, supra note 4, § 14.11[C][3], at 1227-29.

6

admission." Lofton Ridge, LLC v. Norfolk S. Ry., 268 Va. 377, 383, 601 S.E.2d 648, 651 (2004); see also Va. R. Evid. 2:803(0). Despite the admissibility of a guilty plea, however, it does not constitute "a preclusive bar" under the doctrine of judicial estoppel "unless the parties are the same." Lofton Ridge, LLC, 268 Va. at 383, 601 S.E.2d at 651. The trial court erred in holding otherwise and by incorporating its error into a jury instruction.[7]

## B. ENFORCEMENT OF DISCOVERY DISCLOSURE RULES

Mikhaylov also contends the trial court abused its discretion in overruling his objection to the expert opinion testimony of Dr. Lippman addressing the future medical needs of Sales, a previously undisclosed expert opinion. We agree.

### 1.

Pretrial discovery rules require litigants to respond to discovery requests in a timely and forthcoming manner. As every litigator and trial judge knows, however, confidence in that aspirational goal can sometimes be dispirited by contests over the timeliness and completeness of discovery responses. That is particularly true in disputes involving the discovery of expert witness opinions.

The scope of discovery "with respect to the 'facts known and opinions held by experts in anticipation of litigation' is restricted by the proviso that such facts and opinions 'may be obtained *only*' by following the procedures set forth in subsections (A), (B), and (C) of Rule 4:1(b)(4)." Flora v. Shulmister, 262 Va. 215, 222, 546 S.E.2d 427, 430 (2001) (alteration omitted) (quoting Rule 4:1(b)(4)). Rule 4:1(b)(4) requires litigants to answer interrogatories requesting the disclosure of expert opinions, and Rule 4:1(e)(1) imposes on each litigant "a duty

---

[7] For the same reason, the court similarly erred when it sustained evidentiary objections to Mikhaylov's testimony seeking to deny or to explain away his guilty plea, see Appellant's Br. at 1 (assignment of error 1), and to Mikhaylov's testimony denying an "attack," see id. (assignment of error 2).

promptly to amend and/or supplement" interrogatory answers concerning "the substance of the expert's testimony" when the party learns that in some material respect his prior answers are either inaccurate or incomplete.

Because the timing of the duty to disclose expert opinions can sometimes lead to insufferable arguments over who knew what when and why it took so long to disclose it, courts use pretrial scheduling orders to mark the outer boundaries of the disclosure duties. The Uniform Pretrial Scheduling Order, similar to the one issued in this case, requires the identification of any expert a party expects to call as a witness at trial, a statement of the subject matter on which the expert is expected to testify, and a disclosure of the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. See Form 3, § III (Appendix to Rule 1:18(B)) (requiring disclosure, "[i]f requested," of "all information discoverable under Rule 4:1(b)(4)(A)(i)"); see generally Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295 (1990) ("The purpose of the order was to allow the litigants to discover the expert witnesses' opinions in preparation for trial.").[8]

The Uniform Pretrial Scheduling Order warns that experts "will not *ordinarily* be permitted to express any nondisclosed opinions at trial." Form 3, § III (Appendix to Rule 1:18(B)) (emphasis added). This warning reinforces the trial court's presumptive authority to prohibit a party in material breach of an order regulating discovery from "introducing designated matters in evidence." Rules 4:12(b)(2)(B). In using this authority, however, the trial court must

---

[8] The Uniform Pretrial Scheduling Order also makes clear that it does not supersede "the Rules of Supreme Court of Virginia governing discovery." Form 3, § II (Appendix to Rule 1:18(B)). It reminds the parties that they "have a duty to seasonably supplement and amend discovery responses pursuant to Rule 4:1(e) of the Rules of Supreme Court of Virginia." Id. "Seasonably means as soon as practical." Id. Thus, the deadlines in the Uniform Pretrial Scheduling Order serve as the ultimate limits. Depending on the circumstances, the duty to amend or supplement required by Rule 4:1(e) may sometimes require an earlier disclosure.

distinguish between the ordinary case (in which the nondisclosed opinion should be excluded) and the extraordinary case (in which it should not). See Form 3, § III (Appendix to Rule 1:18(B)). We have never adopted an inflexible list of factors governing this discretionary judgment call, and we do not do so now. That said, we can identify in this case a variable that clearly does not belong on that list of discretionary factors.

2.

In this case, the trial court entered a pretrial scheduling order pursuant to Rule 1:18. The order required Sales to designate (having been requested to do so by interrogatories) her primary experts "on or before 90 days before trial" and her rebuttal experts "no later than forty-five (45) days before trial." The order also required the disclosure of "all information discoverable" under Rule 4:1(b)(4)(A)(i). Sales identified Dr. Lippman as a rebuttal expert to address the reasonableness and necessity of medical treatment provided to Sales. The disclosure, however, made no reference to any opinion on future medical treatment.

At trial, Dr. Lippman offered an opinion stating that, at some point in the future, Sales would need additional medical treatment as a result of the alleged assault and battery. See J.A. at 464, 491 (describing need for "an anterior cervical discectomy and fusion"); id. at 480 (opining on the need for future treatment of "meniscus" injuries). Mikhaylov objected, contending that this opinion appeared nowhere in any discovery disclosures, either before or after the expert witness cutoff in the pretrial scheduling order. Nor did this opinion arise at any time during the expert's deposition. Sales conceded both of these points before the trial court.

The trial court overruled the objection based upon the view that Mikhaylov should have raised his objection "before trial, by motion in limine or by protective order." Had he done so, the court reasoned, it would have spared Sales from having the objection "suddenly . . . thrust

9

upon" her during "the middle of trial." The court's rationale implied that Mikhaylov had forfeited his objection to the testimony by not filing a pretrial motion. Whether the court understood its ruling in those terms or not, its ruling had the effect of a de facto waiver rule. We know of no such rule,[9] and despite the wide boundaries of a trial court's discretion on such matters, it would not extend far enough to create such a rule. It was Sales, not Mikhaylov, who violated the court's pretrial scheduling order and the expert discovery rules. Thus, it was Sales, not Mikhaylov, who had the duty to attempt to cure the violation prior to trial. Unless Mikhaylov was somehow complicit in the violation — an allegation not made in this case — he was under no obligation to file a pretrial motion to contest the admissibility of expert testimony on a subject that had never been disclosed to him.[10]

Aside from the trial court's waiver theory, we see no other legitimate reason for allowing Sales to introduce into evidence Dr. Lippman's previously undisclosed expert opinion on her future medical needs. Sales offered no reasonable excuse for not disclosing the opinion and suggested no basis for inferring that Mikhaylov was in any way responsible for this failing. The only explanation Sales offered for excusing her nondisclosure was that Mikhaylov should have

---

[9] The trial court did not mention it, but perhaps it was thinking of the provision in the pretrial scheduling order addressing motions in limine, which stated: "Absent leave of court, any motion in limine which requires argument exceeding five (5) minutes shall be duly noticed and heard before the day of trial." That provision, however, does not require all evidentiary objections (contesting testimony or exhibits expected to be offered at trial) to be asserted *before* trial in a motion in limine to prevent forfeiture. Instead, this provision merely clarifies that any motion in limine that a party anticipates raising at trial must be raised before trial or else it will be limited to five minutes of argument at trial.

[10] See John Crane, Inc. v. Jones, 274 Va. 581, 592, 650 S.E.2d 851, 856 (2007) ("[A] party is not relieved from its disclosure obligation under the Rule simply because the other party has some familiarity with the expert witness or the opportunity to depose the expert."); City of Hopewell v. County of Prince George, 240 Va. 306, 314-15, 397 S.E.2d 793, 797 (1990) (affirming the refusal of expert opinions provided on the "eve of trial"); Woodbury, 239 Va. at 654, 391 S.E.2d at 295 ("Five months is more than sufficient time for a litigant to identify expert witnesses."); see also Sinclair & Middleditch, supra note 4, § 12.5, at 968.

anticipated — based upon the pleadings filed by Sales and her general discovery answers — that (i) she wanted to recover damages for future medical treatment; (ii) she would need an expert opinion to do so; and (iii) such an opinion would likely come from Dr. Lippman, the only medical expert identified by Sales in discovery.

We hold this series of suppositions to be insufficient as a matter of law to relieve Sales from her obligation under Rule 4:1(b)(4)(A)(i), Rule 4:1(e), and the pretrial scheduling order to provide a timely and specific disclosure of her anticipated expert testimony.[11] To hold otherwise would reduce the expert disclosure obligation to the status of a mere recommendation or, worse, a juristic bluff — obeyed faithfully by conscientious litigants but ignored at will by those willing to run the risk of unpredictable enforcement.

### III.

In sum, the trial court incorrectly applied principles of judicial estoppel to preclude Mikhaylov from denying that he had assaulted or battered Sales. The court also erred in denying Mikhaylov's objection to Dr. Lippman's previously undisclosed opinion on future medical treatment. As a result, the trial court erred by incorporating these errors into two of its instructions to the jury. We reverse the final judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

---

[11] Because Dr. Lippman provided the only expert testimony on this subject, it necessarily follows that the trial court erred in including future medical treatment in its jury instruction on damages. See Appellant's Br. at 1 (assignment of error 3).