COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Decker, AtLee and Senior Judge Frank
Argued at Norfolk, Virginia


ARTHUR AMIL ZEBBS

                                                      OPINION BY
v.        Record No. 0933-15-1              JUDGE RICHARD Y. ATLEE, JR.
                                                      MAY 17, 2016
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Christopher W. Hutton, Judge

Charles E. Haden for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


As a term of his probation for various sex crimes, Arthur Zebbs was ordered to complete

sex offender treatment.  This treatment required Zebbs to admit that he had committed the crimes

for which he was on probation.  Zebbs refused to make such an admission, and was removed

from treatment as a result.  Because Zebbs failed to complete the treatment, a judge of the Circuit

Court for the City of Hampton ("the circuit court") found him in violation of the terms of his

probation.  Zebbs now appeals that revocation, arguing that the treatment program's requirement

that he admit his past crimes violated his rights under both the Fifth Amendment to the United

States Constitution and Article I, § 8 of the Virginia Constitution.  We do not agree with Zebbs's

contention, and we affirm the circuit court's decision.

# I. BACKGROUND

In 2002, Zebbs entered guilty pleas, pursuant to <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970),[1] to three charges:  forcible sodomy (a felony in violation of Code § 18.2-67.1) and two counts of unlawful filming of a minor (misdemeanors in violation of Code § 18.2-386.1(A)). Pursuant to a plea agreement, the circuit court sentenced Zebbs to twenty-five years in prison with thirteen years suspended for the sodomy charge, and to a combined twenty-four months of incarceration, all suspended, for the misdemeanors.  As a term of the partial suspension of his sentences, Zebbs's plea agreement required him to "undergo and complete sex offender treatment."[2]  The trial court's sentencing order required this as well.[3]  In 2012, after serving his penitentiary sentence, Zebbs was released to probation.  Completion of sex offender treatment was a term of his probation.  The Commonwealth filed a show cause against Zebbs in 2013 for failing to follow his probation officer's instructions, specifically for failing to admit, during the course of sex offender treatment, that he committed the crimes for which he was on probation. In that revocation proceeding, the circuit court found Zebbs in violation of the terms of his probation, but took "no further action to revoke the sentence," and ordered him to continue with probation and sex offender treatment.[4]

---

[1] "When offering an <u>Alford</u> plea of guilty, a defendant asserts his innocence but admits that sufficient evidence exists to convict him of the offense."  <u>Ramsey v. Commonwealth</u>, 65 Va. App. 593, 596 n.1, 779 S.E.2d 241, 243 n.1 (2015).

[2] At his subsequent probation revocation hearing, Zebbs claimed that this provision was inserted after he signed the plea agreement.

[3] Zebbs did not appeal his convictions, and the time for doing so has expired.

[4] Zebbs appealed that decision to this Court.  His petition was denied by one judge, and again after review by a three-judge panel.  Zebbs then noted his appeal of that denial to the Supreme Court, where his petition is pending.

A second show cause was issued in January of 2015 at the request of Zebbs's probation officer. In the motion accompanying the 2015 show cause, the probation officer alleged that Zebbs failed "[t]o follow the Probation Officer's instructions and be truthful and cooperative." At the revocation hearing, Zebbs's attorney confirmed the specific basis of the allegation when he asked the probation officer: "And the only reason that [Zebbs] was discharged [from sex offender treatment] was his refusal to admit that he had committed the offense for which he was on probation, correct?" The probation officer responded: "Correct."

The most detailed description of Zebbs's refusal to admit his crimes is found in the "Sex Offender Treatment Discharge Summary," admitted into evidence without objection as a Commonwealth's exhibit at the hearing on June 10, 2015.[5] That document reads, in part:

> On 11.28.12, a Discharge Summary form [sic] Greensville Mental Health Unit recommended Sex Offense Specific Treatment upon release but noted [Zebbs] was in denial regarding his offense. . . . On 04.22.13, he started treatment . . . and remained in denial throughout the course of treatment and was terminated in July of 2013 due to continued denial and subsequent lack of progress. . . .
>
> Mr. Zebbs entered treatment in complete denial. He made typical statements of resistance and avoidance of responsibility such as, "This is all about the money. The state just keeps you in treatment to make money off of you even when you didn't do anything."
>
> . . . Mr. Zebbs was generally polite and voiced a willingness to cooperate with what was asked of him but was unable to complete any treatment objectives as most require disclosure of details of his offense. On 12.04.14, he was asked a final time to give an account of his offense. He stated he has had no offense, never did anything wrong and will never admit to something he did not do. He voiced an understanding of the ramifications of his decision and said he was prepared to go back to court and face the possibility of completing his time.

---

[5] There is no transcript of Zebbs's refusal to admit his crimes, because such refusal occurred while Zebbs was speaking with his sex offender therapist. Zebbs does not dispute that he refused to admit committing these crimes. He maintains now, as he maintained at the time he entered his Alford pleas of guilty, that he did not commit the crimes of which he was convicted.

The circuit court found Zebbs in violation of his probation, revoked and resuspended all but one year of the suspended time in connection with the sodomy charge, and revoked and resuspended all time on the misdemeanor charges.  This appeal followed.

## II. ANALYSIS

When reviewing probation revocation proceedings on appeal, "the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" Green v. Commonwealth, 65 Va. App. 524, 532, 779 S.E.2d 207, 211 (2015) (quoting Davis v. Commonwealth, 12 Va. App. 81, 86, 402 S.E.2d 684, 687 (1991)).  However, we examine Zebbs's Fifth Amendment claim *de novo*.  See Crawford v. Commonwealth, 281 Va. 84, 97, 704 S.E.2d 107, 115 (2011).  Whether reviewing a trial court's decision for abuse of discretion or *de novo*, we continue to view "the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial."  Id. (quoting Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000)).

## A.  Fifth Amendment

The Self-Incrimination Clause of the Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  Although inapplicable to the states at the time it was originally enacted, the Fifth Amendment now "applies to the States by virtue of the Fourteenth Amendment."  Maryland v. Shatzer, 559 U.S. 98, 103 (2010) (citing Malloy v. Hogan, 378 U.S. 1, 6 (1964)).[6]  Violations of the Fifth Amendment privilege against self-incrimination occur in two ways.  In the first

---

[6] Zebbs also invokes Article I, § 8 of the Constitution of Virginia when arguing that the Commonwealth violated his privilege against self-incrimination.  Because "[t]he privilege against compelled testimony under Article 1, § 8 of the Virginia Constitution is no broader in its application than its counterpart under the federal Constitution," Farmer v. Commonwealth, 12 Va. App. 337, 340, 404 S.E.2d 371, 372 (1991), we will, for the sake of convenience, refer to his claim as a Fifth Amendment claim.

scenario, the state attempts to compel an individual to make a statement which might incriminate him in a future criminal trial, the individual invokes the Fifth Amendment and refuses to make such a statement, and the individual is punished for his refusal. In the second scenario, the state compels an individual to make a statement which might incriminate him in a future criminal trial, the individual makes such a statement, and the individual's statement is later used against him in a future criminal trial. See Venable v. Commonwealth, 48 Va. App. 380, 387 n.3, 632 S.E.2d 1, 4 n.3 (2006). If Zebbs falls into either of these categories, it would be the first, because he gave no incriminating statement, and asserts that he was punished for his refusal to do so.

A valid Fifth Amendment claim in such a scenario requires three things. First, the admission sought from an individual must carry a risk of incriminating that individual in a future criminal proceeding. Lefkowitz v. Turley, 414 U.S. 70, 77 (1973). Second, the state must use compulsion in its attempt to obtain the admission. Lefkowitz v. Cunningham, 431 U.S. 801, 806 (1977). Third, because "mere coercion does not violate the text of the Self-Incrimination Clause," Chavez v. Martinez, 538 U.S. 760, 769 (2003) (plurality opinion), there must be "a 'substantial penalty' [imposed] upon [an individual] after he 'elect[ed] to exercise his Fifth Amendment right not to give incriminating testimony against himself,'" Venable, 48 Va. App. at 389, 632 S.E.2d at 6 (third alteration in original) (quoting Cunningham, 431 U.S. at 805). Failure to establish any one of these three prongs defeats a claim that the Fifth Amendment has been violated.

In Venable, a probationer refused to admit that he committed the crime of which he had been convicted, as required by his sex offender treatment program. He was discharged from the program, and was found in violation of his probation as a result. Venable claimed that the admission demanded of him violated his Fifth Amendment rights, because it would subject him to "a possible perjury charge in regards to [his] testimony concerning [his] conviction." Id. at

- 5 -

384, 632 S.E.2d at 3. (Unlike Zebbs, who entered an Alford plea of guilty, Venable pled not guilty and was convicted after a trial.) This Court found that Venable's Fifth Amendment rights had not been violated. This Court assumed, for purposes of the appeal, that Venable's admission of guilt would have placed him in danger of prosecution for perjury. However, the Court found that, because the trial court had not revoked any of Venable's suspended time, and had instead permitted him to enroll in a different sex offender program, there was no "substantial penalty" imposed on Venable as a result of the exercise of his Fifth Amendment rights. Id. at 389, 632 S.E.2d at 5. This finding obviated the need for the Court to "reach the issue of whether forcing a probationer to choose between either losing his conditional liberty or incriminating himself during court-ordered counseling constitutes 'compulsion' within the meaning of the Fifth Amendment." Id. at 389, 632 S.E.2d at 5-6.

Here, we need not grapple with the questions of compulsion or the imposition of a substantial penalty, because we find that incrimination (as it is understood in the Fifth Amendment context) was not present. In Venable, the Court assumed, "for purposes of this appeal only, that Venable's admission of guilt would be self-incriminating." Id. at 388 n.4, 632 S.E.2d at 5 n.4. As explained below, the facts here permit no such assumption, rather we must assume the opposite: any admission of guilt by Zebbs could *not* result in future prosecution. Such a prosecution would be barred by the Double Jeopardy Clause of the Fifth Amendment.[7] Therefore, though Zebbs may have been required to admit committing a crime, such an admission would not be "incriminating" for purposes of the Fifth Amendment.[8] Because Zebbs

---

[7] The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution forbids that "any person be subject for the same offence to be twice put in jeopardy of life or limb."

[8] Zebbs faces no risk of perjuring himself if he admits committing the crimes of which he was convicted, because he entered pleas of guilty to the offenses and, thus, never testified under oath that he did not commit the crimes.

fails to establish incrimination, the first part of a multi-part conjunctive test, we need not address the remaining factors, compulsion and penalty.

We agree with Zebbs that the protections of the Fifth Amendment do not evaporate following one's conviction and sentencing for a crime, nor are these protections diluted during any subsequent probationary period. Minnesota v. Murphy, 465 U.S. 420, 426 (1984). However, the Fifth Amendment does not immunize people from making difficult choices or embarrassing disclosures. United States v. Calandra, 414 U.S. 338, 353 (1974); Doss v. Commonwealth, 23 Va. App. 679, 687-88, 479 S.E.2d 92, 96-97 (1996). Nor does it provide sanctuary from the obligation to respond to questions whose answers are not incriminating. Carter v. Commonwealth, 39 Va. App. 735, 749, 576 S.E.2d 773, 780 (2003). Even an answer that admits the past commission of a crime is unprotected by the Fifth Amendment if the person giving the answer cannot face future criminal prosecution for the crime described. This is so because "[t]he interdiction of the Fifth Amendment operates only where a witness is asked to incriminate himself—in other words, to give testimony which may possibly expose him to a criminal charge. *But if the criminality has already been taken away, the Amendment ceases to apply*." Hale v. Henkel, 201 U.S. 43, 67 (1906); see also Murphy, 465 U.S. at 426 (observing that compelled statements "are inadmissible in a *subsequent trial for a crime* other than that for which he has been convicted" (emphasis added)); United States v. Antelope, 395 F.3d 1128, 1134 (9th Cir. 2005) (noting that "the Fifth Amendment's self-incrimination clause . . . may only be invoked when the threat of *future criminal prosecution* is reasonably particular and apparent" (emphasis added)). Thus if the criminal conduct described in the statement cannot be prosecuted, it is not "incriminating" for purposes of Fifth Amendment analysis.

The "criminality" of an otherwise incriminating statement may be "taken away" in various ways. In Brown v. Walker, 161 U.S. 591 (1896), the Supreme Court observed that, aside

- 7 -

from waiver, expiration of the applicable statute of limitations for the conduct described can operate to remove the protections against compelled self-incrimination. Id. at 598. The Court explained that "if the testimony sought cannot possibly be used as a basis for, or in aid of, a criminal prosecution against the witness, the rule [protecting the witness from compelled self-incrimination] ceases to apply." Id. at 597. In Kastigar v. United States, 406 U.S. 441 (1972), the Supreme Court held that the government could compel incriminating testimony from a witness, because the government had fully immunized such witness "from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom." Id. at 453. Neal v. Shimoda, 131 F.3d 818 (9th Cir. 1997), was a consolidated appeal by two prisoners of adverse summary judgment rulings in their civil claims against prison administrators alleging, in part, that the administrators had violated the prisoners' Fifth Amendment rights. The basis for the claim was that the prisoners' sex offender treatment program required them to admit committing the crimes of which they had been convicted. The Ninth Circuit Court of Appeals rejected the claim that the Fifth Amendment protected a prisoner from the consequences of refusing to admit such crimes during treatment, since "[d]ouble jeopardy considerations would preclude any admission . . . from being used against him." Id. at 833.

All of these cases share some factor or concept (the statute of limitations, a grant of immunity, double jeopardy protection) that eliminates the risk of future prosecution as a result of an incriminating answer to a compelled question. In Zebbs's case, he was required to admit the crimes of which he had been convicted, and no others.[9] Zebbs was not asked to provide

---

[9] In his reply brief, Zebbs asserts that the probationary requirement that he submit to polygraph examinations violated his rights under the Fifth Amendment. At the revocation hearing, there was testimony about two different types of polygraph examination: "instant offense" and "full disclosure." An instant offense polygraph requires an offender to admit the behavior of which he was already convicted, i.e. to confirm the facts that gave rise to the charge for which he was sentenced and placed on probation. A full disclosure polygraph (occasionally referred to as a "sexual autobiography"), on the other hand, is wide-ranging and covers questions

information about uncharged conduct or unknown crimes. He was asked only to admit to the facts which gave rise to the charges of which he had already been found guilty. By operation of the Double Jeopardy Clause, Zebbs was not subject to further criminal liability for the specific answers sought. As such, his answers could not "expose him to a criminal charge." Hale, 201 U.S. at 67. That being the case, the Fifth Amendment "ceases to apply." Id.

## B. Alford Plea

Zebbs stresses that "[h]e did not plead guilty but rather entered an Alford plea." At arraignment, an accused has a choice: he "may plead not guilty, guilty or nolo contendere." Code § 19.2-254. An Alford plea is not a fourth option, rather it is a specific type of guilty plea. "Virginia courts 'treat Alford pleas as having the same preclusive effect as a guilty plea.'" Ramsey v. Commonwealth, 65 Va. App. 593, 596 n.1, 779 S.E.2d 241, 243 n.1 (2015) (quoting Perry v. Commonwealth, 33 Va. App. 410, 412, 533 S.E.2d 651, 652 (2000)). Consequently, they are frequently referred to as "'Alford' pleas of guilty." Id. (quoting Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008)). Once an accused has been found

---

about uncharged conduct, answers to which might subject the offender to future criminal prosecution. Significantly, incriminating answers given in the course of a full disclosure polygraph would be reported to law enforcement by the treatment provider, according to testimony from the probation officer. Requiring an unincarcerated probationer to undergo un-immunized, full disclosure polygraphs has the potential to raise significant issues implicating the Fifth Amendment. See McKune v. Lile, 536 U.S. 24, 50-52 (2002) (O'Connor, J., concurring in the judgment). However, we do not address those implications, because to do so in the context of this case would be to offer an advisory opinion, which we are not empowered to do. Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998). The constitutionality of full disclosure polygraphs is not ripe for adjudication here, because from the evidence presented, it is clear that Zebbs was never required to take a full disclosure polygraph, and his revocation in the case before us is not based on a refusal to answer full disclosure polygraph questions. At the revocation proceeding, Zebbs's probation officer testified: "He did not do the full disclosure [polygraph]. He did an instant offense polygraph." App. at 119. Later during this same proceeding, the Commonwealth's attorney asked the probation officer: "To your knowledge, he's never been required to take a polygraph with questions beyond asking him whether he committed the offense that he's pled guilty pursuant to Alford?" The probation officer's response: "Correct." Id. at 132.

guilty and sentenced, any distinction between an ordinary guilty plea and an Alford plea of guilty ceases to be relevant for purposes of a subsequent violation of a suspended sentence.[10]

In Carroll v. Commonwealth, 280 Va. 641, 701 S.E.2d 414 (2010), Carroll raped his twelve-year-old stepdaughter, then entered an Alford plea of guilty to the charge. The trial court accepted Carroll's plea, but suspended imposition of a sentence for five years, during which time Carroll was to be on supervised probation, one term of which was the completion of any treatment required by his probation officer. At the end of the five-year period, provided Carroll complied with the terms of the suspended imposition of sentence, his charge was to be reduced to a misdemeanor. Such a reduction never occurred, however, because part of Carroll's treatment for his offense required him to admit the rape, an admission he refused to make. Carroll was terminated from his treatment program and his probation was revoked, whereupon the trial court convicted him of the rape and sentenced him to a suspended five-year prison sentence. On appeal, Carroll assigned error to the trial court's revocation of his probation based upon his refusal to admit to a crime to which he had entered an Alford plea. The Supreme Court affirmed Carroll's conviction, observing:

---

[10] The distinction among pleas remains relevant in other contexts, particularly when courts confront the use in a civil case of a plea previously entered in a related criminal case. In Carroll v. Commonwealth, 280 Va. 641, 650, 701 S.E.2d 414, 419 (2010), the Supreme Court observed that, in the civil case of Parson v. Carroll, 272 Va. 560, 636 S.E.2d 452 (2006), "this Court decided that a concession made in an Alford plea is a concession of law and not of fact and is not a bar to a post-Alford [civil] proceeding in which the issue is whether, as a matter of fact, the accused participated in the acts constituting the offense." Even entering a guilty plea does not estop a defendant in a subsequent civil case from contesting civil liability, as the Supreme Court explained recently in Mikhaylov v. Sales, __ Va. __, __, __ S.E.2d __, __, No. 150552, 2016 Va. LEXIS 53 (Apr. 21, 2016). There, the Court addressed the issue of judicial estoppel when a defendant pled guilty to assault and battery, and was subsequently sued by the victim for assault and battery. The Court quoted Code § 8.01-418 and observed that "a guilty plea 'shall be admissible' evidence 'in any civil action' involving the 'same occurrence.'" Id. at *8. However, the Court went on to point out that, notwithstanding the admissibility of the defendant's plea in the subsequent civil case, the doctrine of judicial estoppel did not bar him from disputing that he committed the assault and battery in the civil case because there was not identity of parties in the two proceedings, i.e., the victim and the Commonwealth were different parties. Id.

A defendant's protestations of innocence under an <u>Alford</u> plea extend only to the plea itself. . . .

. . . Whatever the reason for entering an <u>Alford</u> plea, the fact remains that when a defendant enters such a plea, he becomes a convicted sex offender and is treated no differently than he would be had he gone to trial and been convicted by a jury.

<u>Id.</u> at 651-52, 701 S.E.2d at 419 (quoting <u>State ex rel. Warren v. Schwarz</u>, 579 N.W.2d 698, 707 (Wis. 1998)). The Supreme Court was clear: "[N]othing in the <u>Alford</u> opinion, the <u>Parson</u>[11] opinion, or any other Virginia opinion indicated that an <u>Alford</u> plea is a bar to a post-<u>Alford</u> proceeding in which a sex offender is required to admit his guilt during treatment." <u>Id.</u> at 650-51, 701 S.E.2d at 419. The Court went on to quote the Seventh Circuit Court of Appeals:

Warren believes that the acceptance of an <u>Alford</u> plea is an assurance that a defendant will not have to admit guilt during either conviction or punishment. He is wrong. He can maintain his innocence at the drug store, the grocery store and any other public place he desires. But, when in the private setting of sex offender counseling that is ordered as a condition of probation, and his admission is necessary for rehabilitation, he must admit responsibility for his conduct.

<u>Id.</u> at 652, 701 S.E.2d at 419-20 (quoting <u>Warren v. Richmond Cnty. Cir. Ct.</u>, 223 F.2d 454, 459 (7th Cir. 2000)).

In <u>Carroll</u>, the Supreme Court was confronted with a scenario remarkably similar to that confronting this Court today. The Supreme Court was unambiguous: an <u>Alford</u> plea of guilty does not affect a probationer's obligation to comply with a treatment requirement that he admit his guilt. As such, we hold that the trial court did not abuse its discretion when it found Zebbs in violation of his probation and revoked a portion of his suspended sentence.

---

[11] <u>Parson v. Carroll</u>, 272 Va. 560, 636 S.E.2d 452 (2006), was a civil case in which the Supreme Court held that a criminal defendant, convicted following an <u>Alford</u> plea of guilty, was not barred by the doctrine of judicial estoppel from contesting the facts of his crimes in a subsequent civil case.

III.  CONCLUSION

Zebbs faced no possibility of criminal prosecution for admitting the crimes for which he was on probation, as he had already been convicted of those crimes.  For this reason, Zebbs's Fifth Amendment rights were not violated.  His plea to the underlying charges pursuant to North Carolina v. Alford does not affect his obligation to comply with the requirement of his sex offender treatment that he admit his crimes.  As such, the trial court did not err when it found Zebbs in violation of the terms of his probation, and revoked a portion of his suspended sentence.

Affirmed.