UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Malveaux, Athey and Frucci


JAMES LEE WOLTZ, JR., S/K/A
 JAMES LENOIR WOLTZ, JR.

v.      Record No. 0354-25-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
MARCH 24, 2026


FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

(Matthew L. Pack; M. Pack Law, PLLC, on brief), for appellant.

(Jason S. Miyares,[1] Attorney General; Rebecca Johnson Hickey,
Assistant Attorney General; Jason D. Reed, Senior Assistant
Attorney General, on brief), for appellee.


The Circuit Court of Botetourt County ("trial court") found James Lenoir Woltz, Jr.

("Woltz") in violation of the conditions of his suspended sentence. As a result, the trial court

revoked and resuspended the sentence except for time served. On appeal, Woltz contends that

the trial court abused its discretion by finding that his failure to complete a polygraph

examination was a probation violation. In support, he further contends that the requirement that

he complete a polygraph examination violates his Fifth Amendment privilege against

self-incrimination. Woltz also asserts that since he was physically unable to complete the

polygraph examination, requiring him to perform the examination as a condition of his

suspended sentence was an abuse of discretion. Finding no error, we affirm.[2]

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] Having examined the briefs and record in this case, the panel unanimously agrees that

Pursuant to a written plea agreement, Woltz pleaded no contest to using a communications system to facilitate indecent liberties, in violation of Code § 18.2-374.3(B). By order entered April 12, 2022, the trial court subsequently sentenced him to 5 years' incarceration, with all of the sentence suspended except for time served. The sentencing order, which incorporated the plea agreement, placed Woltz on supervised probation and required him to comply with the rules and requirements set by probation. The sentencing order also imposed special conditions, including requiring Woltz to install monitoring software on all his electronic devices. He was also prohibited from possessing any electronic device not disclosed to his probation officer, and he was forbidden from having contact "with any minor other than supervised contact with minors who are his family members." The trial court further ordered Woltz to follow all treatment recommendations made by Dr. Keith Fender ("Dr. Fender"),[4] his probation officers, and other qualified professionals, including "[a]ttending and successfully completing a Sex Offender Treatment Program" approved by Woltz's probation officer.

---

oral argument is unnecessary because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

[3] We consider the evidence from a revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all the reasonable and legitimate inferences that may properly derive from that evidence. *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022). "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Id.* (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)). Additionally, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

[4] Dr. Keith Fender provided sex offender treatment for Woltz at Radford Counseling Center.

Woltz and his probation officer reviewed the sex offender special instructions, which required Woltz to complete a sex offender treatment program, stop using any form of social media, and install monitoring software and applications on his electronic devices. In March of 2023, Woltz's probation officer received a psychological evaluation from Dr. Fender at Radford Counseling that recommended Woltz complete sex offense specific counseling.

In a major violation report ("MVR") dated March 21, 2023, Woltz's probation officer reported that Woltz stated that he had been "going to the YMCA to work out" despite being told he could not go there because of the presence of minors. According to the MVR, Woltz also used a Tinder account over the course of several months to communicate with several women, during which he made inappropriate sexual comments. The MVR also noted that Woltz had been removed from sex offender treatment because he continued to deny that he committed the offense to which he had previously pleaded guilty. Woltz also admitted that he used a computer before the tracking and monitoring software was installed. As a result of the foregoing evidence, the trial court found Woltz in violation of the terms of his suspended sentence and revoked and resuspended the balance of the sentence, except for time served. The conditions of the resuspended sentence retained all the conditions previously imposed by the trial court on April 12, 2022.

In another MVR filed in the trial court on October 30, 2024, Woltz's probation officer noted that Woltz had resumed sex offender treatment. However, the MVR also indicated that as a condition of Woltz's sex offender treatment program, Woltz reported for his sexual history polygraph in 2023, but the polygraph was "terminated" because Woltz "admitt[ed] that there was information that he had not disclosed due to fear of more legal difficulties." The MVR further detailed that in both September and October of 2023, Woltz's results indicated deception on his sexual history polygraphs, and in April of 2024, Woltz's examination was once again terminated

because the polygraph examiner determined that Woltz's "blood pressure was 156/102, and his pulse was 105." The MVR also recounted that at Woltz's maintenance polygraph in October of 2024, the probation officers reviewed medical documentation Woltz had provided and determined that he could perform the polygraph examination. Despite showing deception during the examination, Woltz informed the probation officers that he had "nothing further to add to his sexual history packet."[5]

The MVR further indicated that Woltz was terminated from sex offender treatment in October of 2024 because 1) he continued to minimize and deny his "offense of conviction"; 2) he had not scheduled his third sexual history polygraph because he advised treatment providers "that he would not be adding or changing anything during any future sexual history polygraph exams"; and 3) he had not passed a sexual history or treatment-oriented polygraph examination. The MVR explained that Woltz was considered a "high risk for recidivism and in need of treatment" but was discharged "due to his persistent offense enabling cognitive distortions, antisocial/narcissistic attitudes, the lack of accountability for his offense behavior, and difficulty accepting feedback from others." Based on the recitations in the MVR, the trial court issued a capias and scheduled the matter for a revocation hearing.

At the revocation hearing, Woltz's probation officer Megan Johnson ("Johnson") confirmed that he had "completed two sexual history polygraph[s] . . . and . . . showed deception on both." She also testified that despite acknowledging other sexual conduct, Woltz insisted that "he had no additions to th[e] sexual history packet," which precluded scheduling a "third sexual history polygraph." Johnson explained that a maintenance polygraph measures probation

---

[5] In conjunction with the sexual history polygraph, Woltz was required to fill out a packet of information pertaining to his sexual history. Woltz admitted that "there's some stuff that I'm not putting in [the sexual history packet] because I'm afraid it will get me in trouble with the law."

compliance and a sexual history polygraph "looks at [Woltz's] sexual victims over [his] entire lifespan to ensure that there are no additional victims that need to be addressed in treatment." Johnson noted that Woltz had "never passed" either a maintenance polygraph, "an instant offense polygraph," or a sexual history polygraph.

Woltz testified as to various medical conditions and attributed his polygraph failures to the medical conditions. Woltz testified that he had been honest on all his polygraphs but acknowledged that his polygraph results continued to "show deceit." Woltz said that he had "update[d] [his] sexual history" after being assured that the polygraph was intended to address treatment needs. Woltz ultimately admitted at the hearing that he had failed his sexual history polygraph because there were "other individuals" whom he had refused to disclose who were "outside the scope of [his] offense conviction" and that he had "sent and received inappropriate images . . . and had sexual conversations" with those undisclosed individuals.

Woltz also introduced multiple letters from doctors that described his various medical conditions. The first letter, from Dr. Murray E. Joiner, stated that Woltz had multiple medical conditions and that those "conditions should be taken into account when evaluating the results of any test[,] as they may limit his ability to sit for testing and they can adversely skew the results." Similarly, the second letter, from Dr. William F. Ball, recounted additional medical conditions and stated that the conditions "could affect the outcome of any testing done." Finally, the third letter, from Dr. Richard Prokopchak, recounted still other medical diagnoses that were "benign," noting that Woltz requested that he send a letter "in support of documented extra heartbeats."

At the conclusion of all the evidence, the Commonwealth argued that Woltz had not complied with the special conditions of his probation and that there was "no indication" that Woltz had a medical condition that prevented him from completing a polygraph. In response, Woltz argued that his medical conditions were interfering with his ability to truthfully complete a

- 5 -

polygraph and that he had "done everything that probation ha[d] asked him to do." He also asserted that if he was required to complete treatment again that it would be "the same song and dance" in the future because his medical issues would again prevent him from completing a polygraph and he would "end up violated again for the exact same reasons." Woltz did not reference the Fifth Amendment in his arguments. The trial court stated that it had "heard nothing that says [Woltz] can't take the [polygraph] test" and found Woltz in violation of the terms of his suspended sentence. It revoked and resuspended the balance of Woltz's suspended sentence, except for time served, and returned him to probation. Woltz appealed.

## II. ANALYSIS

### A. *Standard of Review*

The "sufficiency of the evidence to sustain an order of revocation 'is a matter within the sound discretion of the trial court.'" *Burford v. Commonwealth*, 78 Va. App. 170, 179 (2023) (quoting *Duff v. Commonwealth*, 16 Va. App. 293, 297 (1993)). When reviewing probation revocation proceedings on appeal, "the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Zebbs v. Commonwealth*, 66 Va. App. 368, 373 (2016) (quoting *Green v. Commonwealth*, 65 Va. App. 524, 532 (2015)).

"The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11, (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). The standard "requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alteration in original) (quoting *Lawlor*

*v. Commonwealth*, 285 Va. 187, 212 (2013)).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Bista v. Commonwealth*, 303 Va. 354, 370 (2024) (quoting *Commonwealth v. Swann*, 290 Va. 194, 197 (2015)).

B. *Woltz waived his challenge to the constitutionality of the polygraph requirement.*

For the first time on appeal, Woltz argues that requiring polygraph examinations as part of his sex offender treatment violated his Fifth Amendment[6] right against self-incrimination and therefore the trial court abused its discretion when it based its violation finding on Woltz's "failure to complete polygraph examinations."  This argument was not preserved, so Woltz has waived it.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  "Rule 5A:18 requires a litigant to make timely and specific objections." *Commonwealth v. Carolino*, 303 Va. 399, 409 (2024) (quoting *Brown v. Commonwealth*, 279 Va. 210, 217 (2010)).  "The purpose of the contemporaneous objection rule is to alert opposing counsel to the issue and to provide the trial court an opportunity to intelligently rule on the issue." *Id.*

During his revocation hearing, Woltz neither invoked nor asserted any argument pertaining to his Fifth Amendment privilege regarding self-incrimination.  For the first time on appeal, Woltz now requests that we reach the merits of his Fifth Amendment argument because he "believes that there is good cause shown to enable this Court to attain the ends of justice."

First, "[t]he Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court; however, when an appellant 'had the opportunity to object but elected not to do so,' the exception does not apply." *Perry v. Commonwealth*, 58 Va. App. 655, 667 (2011) (quoting *Luck v. Commonwealth*, 32 Va. App. 827,

---

[6] U.S. Const. amend. V.

834 (2000)).  Since the record is clear that Woltz had the opportunity to raise an objection to having to perform the polygraph testing based upon his Fifth Amendment privilege against self-incrimination but failed to do so, we decline to apply the good cause exception here.

Second, the "'ends of justice exception is narrow and is to be used sparingly,' and applies only in the extraordinary situation where a miscarriage of justice has occurred."  *Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022)).  The appellant "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred."  *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)).  The exception applies when there has been a "'grave injustice' or a wholly inexcusable 'denial of essential rights.'"  *Winslow v. Commonwealth*, 62 Va. App. 539, 546-47 (2013) (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 513 (2009)).  The error must be "clear, substantial and material."  *Brown*, 279 Va. at 219 (quoting *West v. Commonwealth*, 43 Va. App. 327, 338 (2004)).  And an appellant bears the "heavy" burden to demonstrate that a miscarriage of justice has occurred.  *Holt*, 66 Va. App. at 210 (quoting *Brittle*, 54 Va. App. at 514).  Generally, meeting that burden requires an appellant to "point . . . to a particular place in the record" affirmatively establishing a manifest injustice.  *Brittle*, 54 Va. App. at 517, 519 (declining to apply the exception in part, because the appellant "failed to point [this Court] to a place in the record that affirmatively establishes that an element of the offense did not occur").

Generally, there are two ways that violations of the right against self-incrimination can occur.  *Zebbs*, 66 Va. App. at 373-75.  The first is when the government "attempts to compel an individual to make a statement which might incriminate him in a future criminal trial."  In that type of situation, an individual "invokes the Fifth Amendment," refuses to testify, and then the "individual is punished for his refusal."  *Id.* at 374.  The second situation occurs when the

- 8 -

Commonwealth "compels an individual to make a statement [that] might incriminate him" in the future and then uses the statement "against him in a future criminal trial." *Id.*

Here, Woltz has failed to establish facts consistent with either type of violation of his right against self-incrimination. First, there is no record that Woltz ever invoked his Fifth Amendment rights during any of the failed polygraphs. "It has long been settled that the privilege [against self-incrimination] 'generally is not self-executing' and that a witness who desires its protection 'must claim it.'" *Thomas v. Commonwealth*, 82 Va. App. 80, 114 (2024) (quoting *Salinas v. Texas*, 570 U.S. 178, 181 (2013)). In addition, Woltz's probation conditions said "nothing about his freedom to decline to answer particular questions," *id.* at 115, and the record does indicate that Woltz ever otherwise asserted his Fifth Amendment rights. Rather, Woltz submitting to the polygraph examinations each time reflected that he was attempting to deceive concerning his sexual history. Hence, Woltz's Fifth Amendment right against self-incrimination was not violated. Second, the record is bereft of any suggestion that Woltz's polygraph statements have been "used against him" in a new criminal trial. *Zebbs*, 66 Va. App. at 374. His probation instructions "certainly contained no suggestion that his probation was conditional [up]on [him agreeing to] waiv[e] his Fifth Amendment privilege with respect to further criminal prosecution." *Thomas*, 82 Va. App. at 115 (quoting *Minnesota v. Murphy*, 465 U.S. 420, 437 (1984)). Thus, based upon the circumstances present here, we find that no grave injustice occurred and there was no denial of Woltz's essential rights. *See Holt*, 66 Va. App. at 210. Accordingly, we decline to apply the ends of justice exception.

    C. *The trial court did not abuse its discretion by requiring Woltz to continue sex offender treatment.*

Woltz also contends that the trial court abused its discretion by reimposing the requirement that he continue and complete sex offender treatment because he "has medical

documentation that says he cannot physically take such polygraph" examinations. We simply disagree.[7]

"[A] sentencing court has broad discretion to impose reasonable special conditions of probation and suspension that are tailored to the unique circumstances of a case." *Commonwealth v. Delaune*, 302 Va. 644, 657 (2023). "Probation conditions must be reasonable in light of the nature of the offense, the defendant's background, and the surrounding circumstances." *Murry v. Commonwealth*, 288 Va. 117, 122 (2014). Probation conditions are put in place to "serve[] as a period of genuine rehabilitation and [ensure] that the community is not harmed by the probationer's being at large." *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987).

Here, the medical documentation submitted by Woltz was reviewed by the trial court, but the court nevertheless concluded that it had "heard nothing" asserting that Woltz could not take a polygraph test. Indeed, none of the various letters introduced by Woltz concluded that Woltz was unable to sit for a polygraph examination. The letters only nominally provided that Woltz's numerous medical conditions may affect the results of such an examination. None of the doctors appeared at the revocation hearing, and the trial court did not hear any further medical evidence on the matter. Accordingly, the record is bereft of evidence that supports Woltz's assertion that he is medically or physically unable to take the polygraph examinations as required by his court-ordered sex offender treatment. The requirement for Woltz to complete sexual offender treatment seems reasonable and tailored to Woltz's criminal history of using a communications system to facilitate indecent liberties. The sex offender treatment is therefore designed to both rehabilitate Woltz and to protect the public. *See Griffin*, 483 U.S. at 875. Thus, we conclude

---

[7] To the extent that Woltz also raises a Fifth Amendment claim in this assignment of error, we find that such argument is likewise waived for the same reasons previously mentioned.

- 10 -

that the trial court did not abuse its discretion in imposing sex offender treatment as a condition of Woltz's probation.

## III. Conclusion

Accordingly, we affirm the trial court's judgment.

*Affirmed.*