COURT OF APPEALS OF VIRGINIA

Present: Judges Chaney, Callins and White
Argued at Alexandria, Virginia

UNPUBLISHED

JEFFREY M. COLLINS

MEMORANDUM OPINION[*] BY
v.      Record No. 1756-22-4      JUDGE DOMINIQUE A. CALLINS
DECEMBER 28, 2023

MARTIN A. KORKOWSKI, M.D., ET AL.

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Stephen E. Sincavage, Judge

Thomas M. Wochok; William E. Artz (William E. Artz, P.C., on
briefs), for appellant.

Michael E. Olszewski (Tracie M. Dorfman; Nicholas J.N. Stamatis;
Hancock, Daniel & Johnson, P.C., on brief), for appellees.


After being diagnosed with Stage 4 prostate cancer, Jeffrey Collins sued Dr. Martin

Korkowski and Dr. Korkowski's employer, Loudoun Medical Group ("Dr. Korkowski"

collectively), for medical malpractice. Collins claimed that Dr. Korkowski breached the standard of

care by failing to refer him to a urologist after his blood tests suggested he had prostate cancer,

thereby delaying the diagnosis and treatment of his cancer. Collins maintained that, because

Dr. Korkowski did not refer him to a urologist, his cancer progressed to the point that it became

incurable and terminal. Collins appeals several evidentiary rulings by the trial court. He asserts that

the trial court erred by excluding his proposed rebuttal expert testimony, by admitting excerpts of

his deposition during Dr. Korkowski's defense and then excluding his own "cross-designation" of

deposition testimony, and by allowing Dr. Korkowski to question a defense expert on redirect

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

without allowing further cross-examination from Collins.  Finally, he maintains that these errors, separately or in combination, violated his due process rights and his constitutional right to a fair trial.  For the following reasons, we affirm the trial court's judgment.

BACKGROUND[1]

I.  Collins's Medical Timeline

On April 5, 2000, Collins saw Dr. Korkowski, an internal medicine physician, for an annual physical, including a prostate examination.  Although Dr. Korkowski found no abnormalities during the prostate examination, he ordered a prostate-specific antigen ("PSA") blood test to screen for prostate cancer.  The PSA results on April 7, 2000, were within normal ranges.  When Collins repeated the PSA test in 2003, the results remained within normal ranges.

Collins did not see Dr. Korkowski again until 2007, when he complained of left breast pain.  Further tests revealed that Collins's testosterone levels were 178 ng/dL, which was below the normal range of 241-827 ng/dL.  Collins did not have a PSA test at that time.  When Collins next saw Dr. Korkowski on October 28, 2016, his rectal exam revealed he had an enlarged prostate.  Dr. Korkowski prescribed Flomax and ordered a PSA test.  The test results revealed that Collins's PSA level at 9.11 ng/mL was elevated and exceeded the normal range of 0-4 ng/mL.  Based on Collins's symptoms and the absence of nodules during the rectal exam, Dr. Korkowski believed that Collins likely had benign prostatic hypertrophy (BPH) and informed him he had an "enlarged prostate."  Dr. Korkowski nevertheless recommended a repeat PSA test in four to six months.

Collins saw Dr. Korkowski again in August 2017.  At that time, Collins's PSA was 8.49 ng/mL—lower than it had been in October 2016, but still elevated.  On August 25, 2017,

---

[1] "In reviewing the evidence presented at trial, we view it 'in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences.'" *Pergolizzi v. Bowman*, 76 Va. App. 310, 317 n.1 (2022) (quoting *Starr v. Starr*, 70 Va. App. 486, 488 (2019)).

Dr. Korkowski noted that Collins's PSA levels were "[h]eaded in [the] right direction." When Collins tested his PSA again in January 2018, it had risen to 10.86 ng/mL. Dr. Korkowski prescribed antibiotics and noted that Collins had a history of "BPH." On February 26, 2018, Dr. Korkowski continued Collins on antibiotics and recommended that he recheck his PSA the following month.

Several weeks later, on May 7, 2018, Collins saw Dr. Korkowski and complained of having intermittent groin pain for two months. A rectal exam revealed that Collins's prostate was enlarged, but Dr. Korkowski felt no nodules or abnormal "tone." Dr. Korkowski ordered another PSA test. The May 8, 2018 results reflected that Collins's PSA levels had risen to 14.52 ng/mL. On June 20, 2018, Collins called Dr. Korkowski's office for the results. Dr. Korkowski reviewed the results with Collins and referred him to a urologist.

On July 5, 2018, urologist Dr. Kevin O'Connor examined Collins and found that his prostate was enlarged "with a firm area in the left gland." A subsequent biopsy revealed cancer in several sites. The "Gleason" score for each sample, reflecting the cancer grade, ranged from 7 through 9. On October 15, 2018, Collins underwent a prostatectomy. Based on the pathology studies from the surgery, Collins was diagnosed with a high-grade adenocarcinoma[2] that had spread to four of ten lymph nodes. Collins sought treatment with an oncologist, who diagnosed him with Stage 4 cancer.

## II. The Incidents of Trial

### A. *Plaintiff's Evidence*

At trial, Collins presented expert testimony from three physicians: Dr. Robert Perkel, a family practice doctor; Dr. Mohummad Siddiqui, a urologic oncologist; and Dr. Jiaoti Huang, a pathologist specializing in neuroendocrine prostate cancer. Dr. Perkel opined that

---

[2] The pathology studies concluded that Collins's Gleason score was 9 out of 10.

Dr. Korkowski breached the standard of care by failing to inform Collins that his elevated PSA results in 2016 could reflect prostate cancer and by failing to recommend a repeat PSA test within four to twelve weeks.[3]  Dr. Perkel also opined that Dr. Korkowski breached the standard of care by failing to refer Collins to a urologist after his PSA results remained elevated in May 2017 and by again failing to refer him to a urologist when his PSA results rose further in January 2018.

Dr. Siddiqui concurred, opining that Dr. Korkowski breached the standard of care by either failing to refer Collins to a urologist after his October 28, 2016 PSA test or by retesting him "in a much shorter time period" than four to six months.  Dr. Siddiqui testified that, when Collins's PSA results in August 2017 remained elevated, Dr. Korkowski breached the standard of care by failing to refer Collins to a urologist.  Moreover, Dr. Siddiqui opined that, if Collins's cancer had been diagnosed in 2016 or 2017, there was a 90 to 95% likelihood that a prostatectomy would have cured him; but, because the cancer had metastasized, Collins's five-year survival rate was less than 10%.  Dr. Siddiqui stressed that, based on Collins's rectal exam and PSA levels during that time frame, the cancer had likely not yet spread past the prostate capsule.  Dr. Siddiqui did not believe that Collins had high-grade metastatic prostate cancer before October 2016; however, he noted that patients with high-grade prostate cancer could be cured if the cancer is detected early.

Dr. Huang testified to causation only and did not address whether Dr. Korkowski breached the standard of care.  He testified that Collins had prostate cancer as early as October 28, 2016, but, based on his Gleason scores remaining in the "gray zone" below 10, the cancer was low grade and confined to the prostate.  After late 2017, the cancer cells began to mutate and

_____

[3] Instead, Dr. Korkowski's letter to Collins informed him only that he had BPH and that he should retest his PSA within four to six months.

became more aggressive, as reflected in the higher January 2018 PSA levels, and they became a high-grade Gleason 9 cancer. Dr. Huang reviewed the pathology slides from Collins's surgery and discovered a small percentage of highly aggressive small cell neuroendocrine carcinoma cells among the more common adenocarcinoma cells. Dr. Huang disagreed that a prostate cancer's Gleason score is fixed from the time it first develops. Thus, he opined that if Collins's cancer had been treated with surgery or radiation in 2016 and 2017, he would have been cured.

B. *Defense's Evidence*

Dr. Korkowski presented testimony from three experts: Dr. Jason Engel, Dr. Marc Garnick, and Dr. Mark Markowski. Dr. Engel, a urologist, testified that Dr. Korkowski did not breach the standard of care by monitoring Collins's PSA levels for trends between 2016 and 2018 rather than referring him to a urologist. Dr. Engel opined that a biopsy is not necessarily appropriate when a PSA level is between 4 and 10 ng/mL, but once Collins's PSA rose to 14.52 ng/mL in May 2018, Dr. Korkowski complied with the standard of care by referring Collins to a urologist.

Dr. Garnick, a urologic oncologist, testified that an earlier diagnosis in 2016 would not have altered Collins's prognosis because Collins always had high-grade, Gleason 9 cancer. Moreover, he stated that he knew of no studies or medical literature demonstrating a correlation between rising PSA levels and a higher Gleason score.

On cross-examination, Collins questioned Dr. Garnick about the value of PSA screening in predicting prostate cancer outcomes. Dr. Garnick answered that "whether or not PSA-based testing can lead to an earlier diagnosis, and if that earlier diagnosis can lead to improvements, as measured by patients living longer . . . has been the subject of many, many different studies," and "the answers have been negative."

On redirect, Dr. Korkowski questioned Dr. Garnick further about the studies he cited during cross-examination and presented them to Dr. Garnick without objection. When Dr. Garnick began to address the advances in colon cancer screening, Collins objected that Dr. Garnick was addressing "an area that was not raised . . . in cross-examination" and that he was "going off on a[] . . . tangent that we didn't discuss in cross." Dr. Korkowski responded that Collins had asked Dr. Garnick during cross-examination about "whether earlier prognosis could lead to improvement of outcomes," leading to Dr. Garnick citing certain "studies." Dr. Korkowski maintained that he was "simply following up with him on redirect." Collins offered no further argument, and the trial court overruled his objection. Dr. Garnick concluded his testimony by noting that the studies he referenced supported his opinion that Collins's prognosis would have been no different if his cancer had been detected in 2016 or 2017.

Dr. Markowski, an oncologist, also opined that, had Collins's prostate cancer been diagnosed in 2016 or 2017, Collins's prognosis would have been the same. Like Dr. Garnick, Dr. Markowski stressed that Gleason scores do not increase over time. In Dr. Markowski's opinion, Collins's cancer was already a Gleason 9 in 2016, as reflected in Collins's first elevated PSA test results, but his PSA remained stable until January 2018 because it was suppressed by his low testosterone levels. Dr. Markowski explained that prostate cancer, "particularly metastatic prostate cancer," is "fundamentally addicted to testosterone during its growth phase," but when testosterone levels drop, PSA levels drop and "the tumors shrink." He noted that, eventually, despite the low testosterone levels, the cancer starts growing again, and PSA levels rise. He explained that the term used to describe prostate cancer at that stage is "castration resistance."

In Dr. Markowski's opinion, Collins's PSA levels remained relatively stable until 2018 because his testosterone levels were low, but in 2018, his cancer became castration resistant,

resulting in accelerated cancer growth and higher PSA levels. In support of his opinion, Dr. Markowski cited the fact that Collins was prescribed Lupron following his prostate surgery to lower his testosterone levels, but despite the treatment, his PSA levels rose, indicating he was "already . . . castration resistant." Dr. Markowski stressed that Collins's lack of response to Lupron was unusual because "[a]lmost everybody" responds initially to that treatment, with patients continuing to respond, on average, "two to three years." He noted that Collins's testosterone levels were low when tested in 2007 and likely remained low, as evidenced by his erectile dysfunction and gynecomastia. Dr. Markowski therefore attributed Collins's rising PSA levels in January 2018 to castration resistance rather than to his cancer's evolution from a low-grade to a high-grade cancer.

### C. *Proposed Rebuttal Testimony*

After Dr. Korkowski rested, Collins attempted to present rebuttal expert testimony from Drs. Siddiqui and Huang to challenge Dr. Markowski's opinion that Collins's PSA remained relatively stable until 2018 because his testosterone levels were low and then increased because his cancer became castration-resistant. Collins proffered that his "rebuttal witnesses [would] put on evidence that this testosterone level was not anywhere near low enough to have controlled the PSA values and had nothing to do with the fact that these were stable in 2016 and 2017." He also proffered that the witnesses would refute defense evidence that Collins's PSA levels rose in 2018 because his cancer became castration-resistant.

Dr. Korkowski objected that Collins had not identified the proposed opinion in his pre-trial designation. Collins responded that he could not "anticipate every piece of evidence" that Dr. Korkowski would present and that Dr. Markowski's specific opinion was not recited in Dr. Korkowski's "general designation" of Dr. Markowski's opinion. Dr. Korkowski disagreed and maintained that Dr. Markowksi's opinion "was properly designated." He emphasized that

- 7 -

his designation "state[d] that Dr. Markowski is expected to testify that Mr. Collins had low testosterone levels and how prostate cancer grows in a low testosterone environment. Dr. Markowksi is expected to testify how this contributed to Mr. Collins's cancer becoming hormone refractory." Dr. Korkowski asserted that Collins had been on notice of the opinion since May 2022 but had not designated a rebuttal opinion to address it. Dr. Korkowski conceded that Dr. Huang had been "designated to say when castration resistance happened," but the opinion was "very generic."

Initially, Collins did not dispute Dr. Korkowski's assertion that his rebuttal designation omitted the proposed rebuttal opinions. Collins simply maintained that he could not "counter every opinion" in his rebuttal designation and that "fairness" required the admission of expert testimony on rebuttal challenging the defense opinion that Collins's low testosterone levels explained his stable PSA levels. After the trial court ruled that the proposed rebuttal testimony was inadmissible because it had not been designated, Collins asserted that "Dr. Huang's opinion with respect to castration resistance [wa]s designated." The trial court reviewed the designation and noted that it stated that Dr. Huang would testify that "[Collins] did not have castration resistant prostate cancer at the time of surgery, but he does now." The trial court stressed that "that comment [wa]s made in the course of a discussion" that was not the basis for that opinion and the designation did not include the grounds for the opinion. Accordingly, the trial court concluded that the designation was insufficient.

D. *Verdict and Post-Verdict Motions*

The jury returned a verdict in favor of Dr. Korkowski and Loudoun Medical Group. Collins filed a motion to set aside the verdict and for a new trial. In the motion, Collins reiterated that his rebuttal designation was sufficient with respect to Dr. Huang and that, in any

event, he was not required to designate rebuttal expert opinion under existing Virginia law.[4]  He suggested that he anticipated Dr. Markowksi's testimony, stressing that he designated the opinion "to rebut Dr. Markowski's theory of an aggressive cancer to start, slowed by a low testosterone level (cancer cells feed off of testosterone), and then becoming more aggressive as castration-resistant prostate cancer."  Nevertheless, he disputed Dr. Korkowski's assertion that he had sufficient opportunity to explore Dr. Markowski's opinion during the latter's deposition because his rebuttal designation was due two days before the deposition.

Following a hearing, the trial court denied the motion.  On October 31, 2022, the trial court entered final judgment in favor of Dr. Korkowski and Loudoun Medical Group.  Collins appeals.

ANALYSIS

I.  Rebuttal Expert Testimony

Collins asserts that the trial court erred by excluding his proposed rebuttal expert testimony from Drs. Huang and Siddiqui.  He contends that the proposed rebuttal expert testimony was admissible because it was sufficiently identified in his pre-trial designation. Collins further argues that, even if his designation was inadequate, he was not required to disclose rebuttal expert opinion in his pre-trial designation because Dr. Korkowski never asked

---

[4] In his motion, Collins cited his full designation of Dr. Huang's expected testimony:

> Mr. Collins did not have castration resistant prostate cancer at the time of surgery, but he does now.  The typical treatment course is that the prostatectomy occurs first and then the patient is provided hormonal therapy, which would provide temporary disease control. When the tumor recurs after the therapy, it can cause castration-resistant prostate cancer.  Dr. Huang is of the opinion that the cancer in the cul-de-sac of the peritoneum, the bilateral seminal vesicles, and the right vas deferens, plus in 4 out [of] 10 lymph nodes, would be considered significant metastasis which developed between January of 2018 and October of 2018.

him to disclose rebuttal experts in discovery, and the pre-trial order limited his designation requirement to expert opinions requested in discovery. Moreover, citing authority from another jurisdiction, Collins maintains that, where "a defendant introduces evidence of an affirmative matter in defense or justification," the plaintiff is entitled to present rebuttal evidence "as a matter of right."[5] Finally, he asserts that the trial court's exclusion of the evidence deprived him of his constitutional right to a fair trial.[6]

We review a trial court's "ruling on the admissibility of testimony, whether expert or lay, . . . for an abuse of the court's discretion." *Emerald Point, LLC v. Hawkins*, 294 Va. 544, 553 (2017). "[W]hen the issue is whether a fact or opinion which is the subject of expert testimony has been adequately disclosed in response to a proper discovery inquiry under Rule 4:1(b)(4)(A)(i), the 'application of this rule begins with determining whether the opinion at issue was disclosed in any form.'" *Id.* (quoting *John Crane, Inc. v. Jones*, 274 Va. 581, 591 (2007)). Under Rule 4:1(b)(4)(A)(i), an expert witness designation "must . . . disclose the 'substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.'" *Id.* (quoting Rule 4:1(b)(4)(A)(i)).[7] Thus, in *John Crane*, the Supreme Court affirmed the exclusion of expert testimony when the defendant identified the topic, but not the substance, of the expert's opinion. 274 Va. at 592.

Collins acknowledges the disclosure requirements for expert opinions in *John Crane* and Rule 4:1(b)(4)(A)(i), but he contends that the trial court erred by excluding his rebuttal expert

---

[5] Collins cites *Astill v. Clark*, 956 P.2d 1081, 1086 (Utah 1988), in support of this argument.

[6] In a separate assignment of error, Collins contends that the exclusion of the evidence, standing alone, or in combination with the other errors assigned on appeal, deprived him of due process. We address his constitutional arguments in connection with that assignment of error.

[7] Rule 4:1(b)(4)(A)(i) has been amended since 2017, but the cited language was not altered.

testimony for two reasons. First, Collins asserts that his pre-trial designation adequately disclosed, at least with respect to Dr. Huang, that Collins would present expert testimony addressing whether his low testosterone controlled his PSA levels. Second, Collins suggests that, even assuming that the designation was insufficient, Dr. Korkowski's expert designation was too vague to place him on notice that Dr. Markowski would opine that Collins's low testosterone modulated his PSA in 2016 and 2017. Collins contends that a plaintiff cannot foresee every nuance of defense expert testimony and, therefore, a plaintiff is entitled, as a matter of right, to challenge the defendant's expert testimony through rebuttal expert testimony, regardless of whether the rebuttal expert testimony was disclosed before trial. Collins also notes that he lacked the opportunity to depose Dr. Markowski before his rebuttal designation was due.

The disclosure requirement in Rule 4:1(b)(4)(A)(i) is intended "to 'allow the litigants to discover the expert witnesses' opinions in preparation for trial.'" *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 576 (2011) (quoting *Woodbury v. Courtney*, 239 Va. 651, 654 (1990)). An expert witness disclosure is insufficient unless it reveals both the topic and the substance of the proposed expert testimony. *John Crane*, 274 Va. at 591-92. "It [i]s within the discretion of the [trial] court to determine whether the [disclosure] sufficiently disclose[s] the subject matter on which [the expert] [i]s going to testify, the substance of [his] opinions and a summary of the grounds for [his] opinions." *Condo. Servs.*, 281 Va. at 576. When the expert disclosure contains only a passing reference to a topic, the trial court abuses its discretion by admitting expert testimony. *See Emerald Point*, 294 Va. at 554 (holding that a trial court erred in admitting an expert's testimony regarding dementia, where the expert disclosure contained only a single reference to dementia).

Here, the pre-trial scheduling order required that, if Collins's expert witnesses were requested during discovery, Collins had to identify them 90 days before trial. Dr. Korkowski, in

turn, was required to identify his expert witnesses 60 days before trial. Further, the pre-trial

scheduling order stated that "[i]f requested in discovery, experts or opinions responsive to new

matters raised in the opposing parties, identification of experts shall be designated no later than

45 days before trial." The order also stated,

> If requested, all information discoverable under Rule
> 4:1(b)(4)(A)(i) of the Rules of Supreme Court of Virginia shall be
> provided or the expert will not ordinarily be permitted to express
> any nondisclosed opinions at trial. The foregoing deadlines shall
> not relieve a party of the . . . duty to supplement or amend prior
> responses pursuant to Rule 4:1(e).

Scheduling orders "facilitate the orderly administration of cases" and "must be enforced

by the trial courts." *Reaves v. Tucker*, 67 Va. App. 719, 732 (2017); *see also* Rule 1:18. "There

is little point in issuing such orders if they amount to nothing more than a juristic bluff—obeyed

faithfully by conscientious litigants, but ignored at will by those willing to run the risk of

unpredictable enforcement." *Rahnema v. Rahnema*, 47 Va. App. 645, 658 (2006). "The

impartial, consistent enforcement of scheduling orders provides systemic benefits to litigants and

trial courts alike." *Id.* "Because the timing of the duty to disclose expert opinions can

sometimes lead to insufferable arguments over who knew what when and why it took so long to

disclose it, courts use pretrial scheduling orders to mark the outer boundaries of the disclosure

duties." *Mikhaylov v. Sales*, 291 Va. 349, 358 (2016).

Here, the pre-trial scheduling order provided that, "if requested, all information

discoverable under Rule 4:1(b)(4)(A)(i)" had to be disclosed before trial. The order specifically

warned that "all information discoverable under Rule 4:1(b)(4)(A)(i) of the Rules of Supreme

Court of Virginia shall be provided or the expert will not *ordinarily* be permitted to express any

nondisclosed opinions at trial." (Emphasis added). Rule 4:12(b)(2) empowers a trial court to

"sanction a party that 'fails to obey an order to provide or permit discovery.'" *Galloway v. Cnty.*

*of Northampton*, 299 Va. 558, 563 (2021) (quoting Rule 4:12(b)(2)). One available sanction "is

to prohibit an offending party 'from introducing designated matters in evidence,' including by preventing the party's witness from testifying." *Id.* (quoting Rule 4:12(b)(2)(B)).

The trial court interpreted the expert designation requirement to include rebuttal experts. *See Davis v. Commonwealth*, 70 Va. App. 722, 732 (2019) ("[T]rial courts have the authority to interpret their own orders." (alteration in original) (quoting *Fredericksburg Const. Co. v. J.W. Wyne Excavating, Inc.*, 260 Va. 137, 144 (2000))). Given his extensive designation of rebuttal expert testimony, it is apparent Collins interpreted the designation requirement similarly. Although he now asserts that the pre-trial scheduling order did not apply to rebuttal experts because Dr. Korkowski did not request that information during discovery, Collins did not make that argument to the trial court at the time it ruled on Dr. Korkowski's objection. The first time Collins made that argument was in a supplement to his motion to set aside the verdict. As such, it was no longer timely. *See Bitar v. Rahman*, 272 Va. 130, 139 (2006) ("[A]n objection [as] to the admissibility of evidence must be made when the evidence is presented." (quoting *Kondaurov v. Kerdasha*, 271 Va. 646, 655 (2006))).

Further, the trial court did not abuse its discretion by ruling that Collins did not designate the proposed rebuttal opinion testimony in Dr. Huang's designation. Although Collins asserts that the reference to castration resistance in Dr. Huang's designation addressed the relationship between Collins's testosterone and PSA levels from 2016 to 2018, nothing in the designation relates castration resistance to Collins's PSA levels during that time frame. Even if the castration resistance reference pertained to Collins's PSA levels, the trial court could reasonably construe the reference, read in context with the rest of the paragraph, as referring to the "typical treatment course" for prostate cancer, not to rebut the defense theory that Collins's low testosterone levels stabilized his PSA scores until 2018. As the trial court observed, "[I]t seems that . . . that comment is made in the course of a discussion, that part of that discussion isn't his basis for

having that opinion." The trial court ruled that Collins's rebuttal designation did not encompass the proposed rebuttal testimony that his testosterone levels were not low enough to control his PSA scores.[8] It thus concluded that Collins's rebuttal designation did not sufficiently disclose the subject matter of the proposed rebuttal expert testimony, the substance of the opinion, and a summary of the grounds for the opinion. *Condo Servs.*, 281 Va. at 576. In so concluding, the trial court found that Dr. Huang's designation did not comply with the requirements of the pre-trial scheduling order and that such noncompliance justified exclusion of the rebuttal testimony. Accordingly, we find no abuse of discretion in the trial court's decision. *See Reaves*, 67 Va. App. at 736 (finding no abuse of discretion in a trial court's decision to "uphold the scheduling order by denying [the party] permission to present any witnesses or exhibits that had not been disclosed prior to trial").

As the trial court found Collins's rebuttal expert designation inadequate, we consider whether any "legitimate reason" justified his failure to provide an adequate designation. *Mikhaylov*, 291 Va. at 360 (absent a "legitimate reason" justifying the failure to disclose an expert opinion before trial, the trial court erred by admitting the previously undesignated opinion at trial). In ruling on Dr. Korkowski's objection, the trial court noted that "the opinion [of Dr. Markowski regarding the relationship between low testosterone and PSA test results] was not or should not have been a surprise as it was designated by the [defendants]." Although Collins maintains that he did not have the opportunity to depose Dr. Markowski before Collins's designation deadline, Collins never supplemented his designation after the deposition.

---

[8] On appeal, Collins asserts that "Dr. Siddiqui's rebuttal designation is replete with references to opinions that he would offer regarding the progression of Mr. Collins' cancer from low risk, to intermediate risk, and then to high risk . . . [from] 2016 through 2018." However, Collins did not argue below that his rebuttal designation was sufficient with respect to Dr. Siddiqui. Accordingly, to the extent that he advances that argument on appeal, he has failed to preserve it. Rule 5A:18. Collins does not invoke any exception to Rule 5A:18, and we will not invoke an exception sua sponte. *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

In *City of Hopewell v. County of Prince George*, 240 Va. 306, 314-15 (1990), the Supreme Court affirmed the trial court's exclusion of a rebuttal expert's testimony because the plaintiff had failed to list the rebuttal expert in its pre-trial designation. The Supreme Court rejected the plaintiff's assertion that "it could not reasonably have anticipated the need for [the rebuttal expert]'s testimony" until after it had deposed the defense expert it sought to rebut. *Id.* at 314. The Court stressed that, even though the plaintiff had not deposed the defense expert before the March 1989 deadline for identifying its witnesses, the plaintiff did depose the defense expert in April 1989 before the September 1989 trial date. *Id.* Despite taking the defense expert's deposition and despite the defendant's July 1989 interrogatory response summarizing the defense expert's testimony, the plaintiff "waited until almost the eve of trial to identify [its rebuttal expert] as a prospective witness." *Id.*

Similarly, Collins's lack of opportunity to prepare an adequate designation seems to be one of his own making. Dr. Korkowski initially designated Dr. Markowski's opinion on April 29, 2022, before trial began on June 27, 2022. The pre-trial scheduling order permitted depositions up until 30 days before trial. Although not indicated in the record, Collins acknowledges on brief that he took Dr. Markowski's deposition on May 17, 2022—two days after the deadline for designating his rebuttal witnesses. Collins does not state whether Dr. Markowski revealed his opinion on the effect of Collins's low testosterone during his deposition. At trial, Collins never claimed that he was surprised by Dr. Markowski's testimony, noting only that the defense designation was not very specific. In his post-verdict motion, Collins suggested that he prepared his rebuttal designation in anticipation of Dr. Markowski's testimony.[9] But Collins never supplemented his expert witness designation after May 17, 2022.

_____

[9] At the hearing on his post-verdict motion, Collins argued that "nothing" in Dr. Markowski's designation addressed the significance of Collins's low testosterone levels as

- 15 -

Thus, we hold that the trial court did not abuse its discretion by refusing to allow Collins to present rebuttal expert testimony about low testosterone and PSA because Collins failed to designate such testimony as required by the pre-trial scheduling order.

## II. Deposition Testimony

Collins maintains that the trial court erred by allowing Dr. Korkowski to play certain excerpts of Collins's videotaped deposition at trial. Collins neither identifies where in the record the excerpts were admitted nor describes their content. Nevertheless, he asserts that the trial court erred by admitting the excerpts because Dr. Korkowski did not provide him with specific page and line references of the excerpts until the morning of trial. Further, Collins contends that the trial court erred by refusing to permit him to "cross-designate" other portions of the deposition for admission. Citing Rule 4:7(a)(5), Collins argues that he was entitled to introduce other excerpts because Dr. Korkowski read only a portion of Collins's deposition.[10]

At trial, Collins objected to the admission of excerpts from his deposition because they were not disclosed before trial and because he should be permitted to "cross-designate" portions of the deposition. Dr. Korkowski responded that Rule 4:7(a)(3) permits the use of a party deposition by an adverse party for any purpose and without any disclosure requirement. Dr. Korkowski also stressed that the pre-trial scheduling order only required the pre-trial disclosure of depositions to be used at trial if they were from non-parties, not parties such as Collins. The trial court overruled Collins's objection and permitted Dr. Korkowski to play the deposition excerpts. Collins never proffered his "cross-designation."

---

they related to his PSA. Collins did not, however, object to Dr. Markowski's testimony, nor did he claim that he was surprised by it.

[10] Rule 4:7(a)(5) states: "If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts."

On appeal, Collins's sole argument is that Dr. Korkowski did not provide him with sufficient advance notice that the excerpts would be introduced, thereby hampering Collins's ability to prepare a cross-designation.  Collins does not claim that the admission of the excerpts otherwise prejudiced him.[11]  Because his sole argument is that the untimely identification of the excerpts prejudiced his ability to present a cross-designation, we conclude that he waived his argument by failing to proffer a cross-designation.

"It is well established that a party who wishes to challenge the trial court's exclusion of evidence on appeal must provide a proffer of that evidence that is adequate to permit this Court to determine whether the lower court erred."  *Smith v. Commonwealth*, 72 Va. App. 523, 541 (2020).  "When trial testimony is excluded before it is delivered, an appellate court lacks a basis for reviewing a [trial] court's evidentiary ruling unless the record reflects a proper proffer."  *Graham v. Cook*, 278 Va. 233, 249 (2009).  An appropriate proffer creates a record of "what the [evidence] would have been."  *Holles v. Sunrise Terrace, Inc.*, 257 Va. 131, 135 (1999).  In this regard, the proffer provides a complete record for review.  *Wyche v. Commonwealth*, 218 Va. 839, 843 (1978).  The proffer also allows an appellate court to determine whether the exclusion of the evidence prejudiced a party.  *Graham*, 278 Va. at 249.  "Absent a proffer showing 'harm was done,' we are 'forbidden to consider the question.'"  *Ray v. Commonwealth*, 55 Va. App. 647, 650 (2010) (quoting *Scott v. Commonwealth*, 191 Va. 73, 78-79 (1950)).

Although he contends that he lacked sufficient time to prepare a proffer immediately after Dr. Korkowski introduced the deposition excerpts, Collins never submitted a proffer before the evidence closed or in a post-verdict motion.  Accordingly, as Collins never proffered the proposed deposition testimony, we are unable to address his argument that the trial court

---

[11] Without a record of the admitted excerpts, we would be unable to address whether their admission prejudiced Collins.

- 17 -

committed reversible error by excluding it. *See Molina v. Commonwealth*, 47 Va. App. 338, 368 (2006) (stating that a sufficient proffer allows the appellate court to examine both the admissibility of the proposed evidence and whether, assuming the evidence was admissible, its exclusion prejudiced the proffering party).

### III. Redirect Testimony

Collins asserts that the trial court erred by permitting Dr. Korkowski to question Dr. Garnick on redirect about medical literature concluding that PSA tests were not useful in altering treatment outcomes for prostate cancer patients. He maintains that the redirect was improper because "this line of questioning was not raised [during] cross-examination." Further, Collins contends that the trial court erred by refusing to allow him to cross-examine Dr. Garnick a second time following redirect.

We review a trial court's decision regarding the proper scope of examination for abuse of discretion. *Castillo v. Commonwealth*, 70 Va. App. 394, 461 (2019); *Commonwealth v. Swann*, 290 Va. 194, 199 (2015). "Under 'the American rule' applied in this Commonwealth, the cross-examination of a witness is limited to matters elicited on direct examination." *Smith v. Irving*, 268 Va. 496, 501 (2004). And it is well-established that where new matters are drawn out of a witness during cross-examination, an attorney is permitted to address the same subject on redirect. *See Scholz v. Stand. Acc. Ins. Co.*, 145 Va. 694, 720 (1926) ("A party who has voluntarily brought out evidence on the cross-examination of a witness, will not be heard to object to the same evidence when brought out by his adversary on a re-examination of the same witness."). Accordingly, in assessing whether the trial court abused its discretion by permitting Dr. Korkowski's redirect examination on certain medical literature, we focus on whether Collins, the cross-examining party, "opened the door" to the subject during cross-examination. *Swann*, 290 Va. at 200.

During cross-examination, Collins asked Dr. Garnick whether PSA tests had any value in predicting prostate cancer outcomes, and Dr. Garnick answered that "[t]hat specific question . . . has been the subject of many, many different studies" and that the studies have concluded that PSA tests were not helpful in that regard. Because Dr. Garnick addressed these "studies" during cross-examination, the record shows that Collins opened the door to that subject, entitling Dr. Korkowski to explore the studies further on redirect examination.[12] Thus, the trial court did not abuse its discretion by allowing Dr. Korkowski to question Dr. Garnick on redirect about the medical literature supporting Dr. Garnick's opinion regarding the value of PSA tests in altering the outcome of high-grade prostate cancers.

Moreover, Collins never asked the trial court for permission to conduct additional cross-examination; therefore, the trial court never ruled on that issue.[13] Where a party fails to obtain a ruling on a matter presented to a trial court, there is nothing for this Court to review on appeal, and the "argument is waived under Rule 5A:18." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010) (quoting *Fisher v. Commonwealth*, 16 Va. App. 447, 454 (1993)). Collins does not ask that we consider his argument under an exception in Rule 5A:18, and we will not invoke an exception sua sponte. *Id.* Accordingly, we decline to address Collins's assertion that the trial court erred by refusing to allow him to conduct further cross-examination of Dr. Garnick.

---

[12] Notably, Collins did not move to strike Dr. Garnick's testimony as non-responsive.

[13] Even if Collins had requested further cross-examination, he never proffered the testimony he hoped to elicit on cross-examination. Without such a proffer, we would be unable to determine whether Collins was prejudiced by the trial court's ruling.

IV. Due Process

Collins contends that the trial court's errors, separately or in combination, deprived him of due process and his right to a fair trial. Collins's constitutional arguments hinge on whether the trial court committed error.[14] Because we find no error in the trial court's rulings, we conclude that Collins's constitutional arguments likewise lack merit.

CONCLUSION

For the reasons stated, the trial court's judgment is affirmed.

*Affirmed.*

---

[14] To the extent that Collins asserts he had a constitutional right to present rebuttal evidence, regardless of whether he complied with his discovery and pre-trial order obligations, he cites no authority supporting such an argument, as required by Rule 5A:20(e). Further, he offers no legal authority holding that evidentiary rulings otherwise comporting with rules of court or court orders are unconstitutional. We find that Collins's failure to comply with Rule 5A:20 is significant; therefore, to the extent he advances these arguments, we decline to consider them. *See Fadness v. Fadness*, 52 Va. App. 833, 851 (2008) ("If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention.").